77    321
f215    ¹616

77    321
225    ²284

# West Chester and Philadelphia Railroad Co. *versus* Jackson, Adm'x, &c., of Gray.

1. A railroad company issued stock; becoming embarrassed, a law was passed in 1855, authorizing them to complete their road, &c., to issue preferred stock, the holders to receive a dividend of 8 per cent. from the time of payment therefor before the other stock; the dividend to be paid only out of the net earnings of the road. Other laws authorized the issue of a "consolidated preferred stock," to retire the stock theretofore issued; the holders to receive 8 per cent. from July 1872, before any other stock should receive a dividend. "Consolidated" stock was issued, which was used in retiring all other stock except forty-two shares of the "preferred" stock, the holders of which declined to convert into the "consolidated" stock. In July 1873 a dividend was declared on the "consolidated" and "preferred" stock as it should then stand on the books, payable out of the earnings of the road for the two preceding years: *Held*, that the owners of the forty-two shares of "preferred" stock were entitled to a dividend of 8 per cent. per annum from the time of payment for it in 1855, the whole amount of dividend declared being sufficient for that purpose.

2. Taking "preferred" stock under the Act of 1855, was a contract for the advance of money to the company and was the same as a purchase of the company's bonds; the preferred stock was only a form of mortgage.

3. Assumpsit was the proper form of action for the holder to recover the back dividends; the proceeding not being to enforce the declaration of a dividend.

January 20th 1875. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

27 P. F. SMITH—21

[W. C. & Phila. Railroad Co. *v.* Jackson.]

Error to the Court of Common Pleas of *Chester county :* Of July Term 1874, No. 38.

This was an action of assumpsit, brought July 15th 1873,' by Mary Jackson, executrix, &c., of Gibbons Gray, deceased, against The West Chester and Philadelphia Railroad Company.

After the suit was brought the parties agreed upon and filed a case stated which showed the following facts :—

The defendants were organized as a corporation some time early it the year 1850, under an Act of Assembly approved April 11th 1848.

On the 30th March 1855 (Pamph. L. 157) a supplement to the act of incorporation was passed ; it recited that the company would require for the completion and equipment of their road more money than could be realized by the sale their bonds and stock then authorized ; and that making a floating debt for that purpose would be onerous to the management of the road and probably unduly hazard the interest of the stockholders.

The act enacted :—

Sect. 1. That for the purpose mentioned in the preamble, the company should be empowered to create a preferred stock of 8000 shares of $50 each, the act to be accepted by a majority in value of the stockholders at a meeting called for the purpose.

Sect. 2. Gave preference in taking the stock to the old stockholders.

Sect. 4. That the holders of the preferred stock should be entitled to receive a dividend of 8 per cent per annum on its par value, payable semi-annually, from the time of payment therefor, before any interest or dividend should be paid to the holders of unpreferred stock, and no dividends on the preferred stock should at any time be paid except out of the net earnings of the road, nor until all interest on the debts of the road should have been first paid or provided to be paid out of the net earnings.

Sect. 5. That at any time after one year from the acceptance of this act, the president and managers should have the right, and when the profits of the road should justify it and one-fourth of the unpreferred stock should require it, it should be their duty, to redeem all the preferred stock by paying the holders the full amount of their stock at its par value, " together with a sum which with all dividends and interest theretofore paid thereon, shall amount to 8 per centum per annum from the time of the original payment to the company therefor, and if not so redeemed, the preferred stockholders shall be entitled to only pro rata dividends with the unpreferred stockholders."

Sect. 7. That when the preferred stock should have been paid or redeemed, or the holders neglect or refuse to receive such payment upon its being tendered, the holders of the unpreferred stock should be reinstated in all their rights, &c.

The company accepted the Act of Assembly and issued 5764 shares of preferred stock; after this issue there remained 7858 shares of the common or unpreferred stock, a number of shares of that having been absorbed in the purchase of preferred stock.

Gibbons Gray, the plaintiff intestate, subscribed for 30 shares of the preferred stock and paid for it in full on the 7th of June 1855; one-half in cash and one-half in common stock and received a certificate for the 30 shares October 27th 1855; he afterwards purchased from a holder four shares of preferred stock, for which a certificate was issued to him on the 20th of March 1856; these four shares had been paid for by the original owner on the 7th of June 1855, one-half in cash and one-half in common stock; he also purchased from another holder, two shares of preferred stock, for which a certificate was issued to him December 16th 1858; this had been paid for in like manner, June 11th 1855.

The road went into operation for its whole length from West Chester to Philadelphia in 1859 and has continued in operation ever since.

By an Act of April 13th 1871 (Pamph. L. 1507), for the purpose of relieving the indebtedness of the railroad company and providing for the advantageous operation of the road, the company were authorized to issue not exceeding 35,000 additional shares of preferred stock, " the total aggregate of that issued and to be issued not to exceed $2,000,000," and also for the same purpose to issue bonds to an amount not exceeding $2,000,000, at an interest of 7 per cent. per annum, to be secured by mortgage, &c.

By an Act of April 3d 1872 (Pamph. L. 821), the preferred stock under the Act of 1871, was authorized to be used for improving the road, &c., and " for retiring and cancelling all the stock heretofore issued, upon such terms as the managers may deem advisable; the said stock shall be called consolidated preferred stock and the holders thereof shall receive dividends up to 8 per cent. per annum, commencing from July 1st 1872, before the holder of any stock thereafter issued or otherwise authorized shall receive any dividends; and the holders of said consolidated preferred stock shall receive all arrears of dividends at the rate of 8 per cent. per annum before any dividend is made on the other stock."

By authority of these last two acts the company " have issued 16,388 shares of consolidated preferred stock, all which has been used in retiring and cancelling the preferred and common stock of the company, with the consent of the holders thereof. In so doing they have issued to each holder of preferred stock, three shares of consolidated preferred stock for every two shares of preferred stock previously held by him; and to each holder of common stock as many shares of consolidated preferred stock as he had previously held of common stock, no money being paid or received by the company except in adjusting fractions of shares. In this

manner all the preferred and common stock of the company has been retired and cancelled, except 42 shares of preferred stock (in which are included the said 36 shares of the plaintiff) and 49 shares of common stock.

"No dividend upon any of the stock of the said company was ever declared or paid prior to the 7th of July 1873, on which day a dividend of 4 per cent. upon the preferred and the consolidated preferred stock, as it should stand upon the books of the said company, on the evening of the 10th day of the same month, payable on the 15th of the same month, was declared, and subsequently paid, and the defendant on the said 15th day of July 1873, paid to the plaintiff $72, being 4 per cent. on said 36 shares of preferred stock held by her.   The entire number of shares of preferred stock on the books of the company, on the evening of the 10th of July, were the 42 shares before mentioned; and the entire number of consolidated preferred stock on the books of the company, was 16,388.   The said dividend of 4 per cent. was declared and paid out of the net earnings of the road within the preceding two years, after all interest due on the debts of the company had been first paid out of said net earnings. * * *

"On the 9th day of July A. D. 1873, the plaintiff gave notice to the defendant in writing, that she would on the 15th day of the same month demand payment from the treasurer of the said company of all dividends which had accrued upon the 36 shares of preferred stock standing on the books of the said company, in the name of the said Gibbons Gray, from the time of the original payments therefor, and in pursuance of said notice the plaintiff did on the said 15th day of July 1873, demand of the treasurer of the said company payment, as aforesaid, which payment was refused.

"The questions for the consideration of the court are:

"1. Whether the defendant is liable in this action to pay the plaintiff such a sum as with the dividend of 4 per cent. already paid shall amount to 8 per cent. per annum upon the par value of the said 36 shares of preferred stock from the time the same was originally purchased from the company to the 15th day of July A. D. 1873, the date of bringing this action.

"2. Whether the defendant is liable in this action to pay any sum whatever to the plaintiff as interest or dividends on the said 36 shares of preferred stock.

"If the court shall be of opinion that the defendant is liable in this action to pay to the plaintiff, as in the first question above-stated, then the court well render judgment in favor of the plaintiff for the sum of $2534.59 with interest thereon, from July 15th 1873, with costs.

"If the court shall be of opinion, that the plaintiff is entitled in this action to recover of the defendant any other sum of money,

[W. C. & Phila. Railroad Co. v. Jackson.]

then the court shall render judgment for the plaintiff, for such sum as the court shall consider she is entitled to recover, with costs.

"If the court shall be of opinion, that the plaintiff is not entitled to recover in this action from the defendant any sum of money whatever, then judgment shall be rendered for the defendants with costs."

The opinion of the court was delivered by Butler, P. J.

After showing that the company was liable to pay the arrears of the eight per cent. per annum on the preferred stock, as claimed by the plaintiff, he proceeded: * * * "It follows that the plaintiff's rights have been disregarded; her preference taken from her. The money which belonged to her has been given to others.

"For the injury thus inflicted can she maintain assumpsit? We believe she can. In Massachusetts, in Williston v. Michigan Railroad Co., 13 Allen 400, it is held that a stockholder cannot sue at law for an undeclared dividend. There are many reasons why this should be so, but whether we will follow Massachusetts need not be considered now. This suit is not for an undeclared dividend, but for damages resulting from breach of duty, as in Reese v. The Bank of Montgomery County, 7 Casey 78. The defendant has declared a dividend, amounting in the aggregate to $33,000. Ascertaining the net profits, it set aside a dividend fund of this amount, which it resolved should be distributed. But, instead of distributing to the plaintiff her just proportion, the defendant gave part of what belonged to her to others, in violation of its duty. The extent of her injury is the difference between what she received and what she should have received. Now why may not this sum be recovered in assumpsit? The action lies for breach of trust, breach of duty, and violation of other equitable rights: Coleman v. The Columbia Oil Co., 1 P. F. Smith 74; Crossgrove v. Himmelrich, 4 Id. 203; McCullough v. McCullough, 2 Harris 295; Forrest v. Campbell, Leg. Int., Sept. 4th 1874. Here is no question involved respecting the receipts, disbursements and liabilities of the company, nor the discretion of directors, as where the suit is for an undeclared dividend. Every fact is ascertained, the fund applicable to distribution set aside, and a dividend declared. The fault is simply in withholding a part of the plaintiff's just proportion and giving it to others.

"She must therefore be allowed to recover. But how much was withheld? What should she have received? This depends on the number of shares of preferred stock to participate in the distribution. The case finds that there are but forty-two, all others having been redeemed and cancelled. That this redemption was effected by means of other stock is unimportant. The result is the same as if it had been accomplished by returning the money. The preferred stock was given up, and all rights and obligations created by it are gone. The holders sold out, and in turn became purchasers of a

[W. C. & Phila. Railroad Co. *v.* Jackson.]

different stock, creating other and different relations to the company. There are but the forty-two shares remaining, all besides is common stock, no matter by what name called. The dividend ascertained and set apart was sufficient to pay eight per cent. on the par value of this from the time it was issued. And this sum, deducting the amount received, is what the plaintiff should have had. The parties agree that the balance is $2534.59. For this we therefore direct judgment to be entered, adding interest from July 15th 1873, when it should have been paid, as the case provides for."

Judgment having been entered in accordance with the order of the court, the defendants took a writ of error; they assigned for error, that the court erred:

1. In not entering judgment for the defendant.
2. In entering judgment for the plaintiff for more than $134.10, even if she be entitled to recover in this action.

*W. Darlington*, for plaintiffs in error, discussed the various Acts of Assembly, and argued that the company was not permitted from the earnings of one year to pay their dividends for preceding years in which no profit was made. A dividend not declared cannot be recovered in this action : Williston *v.* Michigan Railroad Co., 13 Allen 400 ; Angel & Ames on Corp. 554. If the plaintiff can recover at all, it can be but for the proportion of the dividend which her thirty-six shares of preferred stock bears to the whole number of such shares existing before the conversion into the consolidated preferred stock. She is bound by the arrangement creating that stock: Curry *v.* Scott, 4 P. F. Smith 277. There were 5764 shares of preferred stock ; the whole dividend was $33,000 ; of this she would be entitled to $206.10, less $72, already received: Coleman *v.* Oil Co., 1 P. F. Smith 74.

*R. T. Cornwell* and *J. J. Lewis*, for defendant in error.—The contract fixing the rights of the parties is in the Act of March 30th 1855, which was to meet the exigencies of the road as then existing, and when they should be met, the preferred stock was to be redeemed. Creating preferred stock is a mode of borrowing money and is but a form of mortgage : Redf. on Railways, sect. 237 ; Everhart *v.* W. C. & Phila. Railroad Co., 4 Casey 353. The action is not to compel the declaration of a dividend; the company has declared a dividend, and plaintiff but claims her share of a dividend declared: Montgomery *v.* Reese, 2 Casey 143, s. c. 7 Id. 78 ; McCullough *v.* McCullough, 2 Harris 295 ; Wilson *v.* Bank, 5 Casey 537.

Mr. Justice WOODWARD delivered the opinion of the court, February 1st 1875.

No language could be more definite and explicit than that of the

fourth section of the Act of Assembly of the 30th of March 1855, under which the rights of the plaintiff below were asserted. The earlier sections had authorized the issue by the West Chester and Philadelphia Railroad Company of eight thousand shares of preferred stock, and had directed the form of subscription, and specified the terms and mode of payment. The fourth section declared that the holders of this stock should be entitled to receive a dividend of eight per cent. per annum, upon their par value, payable semi-annually from the time of payment therefor, in preference of, and before any interest or dividends should be declared or paid in favor of and to any holder or holders of the unpreferred stock of the company. Of the 5764 shares issued in pursuance of the act, Gibbons Gray, the plaintiff's intestate, subscribed for thirty, and subsequently purchased six, which were transferred to him on the company's books. Under the Acts of the 13th of April 1871, and the 3d of April 1872, a fresh adjustment of the corporate capital has been made. These acts authorized the issue of a consolidated preferred stock, into which both the preferred stock under the Act of 1855 and the common stock should be converted, the holders of the former receiving three new shares for two held by them, and the latter receiving share for share. All the holders of the original preferred stock have accepted this adjustment except the plaintiff and the holders of six other shares.

On the 7th of July 1873, a dividend of four per cent. was declared by the company. There had been no previous dividend, and the record shows that this was made up from the net earnings of the road during the two years preceding the date when it was declared. Upon these facts, the question arose whether the plaintiff was entitled to the dividends provided to be paid to the holders of the preferred stock, by the terms of the Act of 1855, or her rights were confined to a participation in the dividend declared in 1873 for the benefit of all the stockholders.

The payment for his shares by Mr. Gray, and the issuing of the certificates to him by the defendants, made as complete a contract as if he had been a purchaser of bonds instead of a subscriber for stock. And his contract rights were precisely defined by the Act of 1855. In effect, it was an agreement for the advance of money to an embarrassed railroad company. A corporation may issue new shares and give them a preference as a mode of borrowing money, where it has power to borrow on bond and mortgage, as preferred stock is only a form of mortgage. Redf. on Railw., sect. 237; Everhart v. Railroad Co., 4 Casey 353. The preferred stock was not designed to form a permanent part of the capital, for provision was made by the fifth section of the act for its redemption. Mr. Gray's subscription was made upon the faith and in view of the statutory stipulations, and of these the plaintiff has the right to require the performance by the defendants. She is entitled to

[W. C. & Phila. Railroad Co. *v.* Jackson.]

receive just what the company agreed to pay when the money was obtained.

It is no answer to the plaintiff's demand to say that her thirty-six shares were part of the 5764 shares originally issued. Her right is not limited to the proportion of the net profits divided in 1873, which would come to her if the other stockholders had retained their rights to participation in the distribution. All of them, except the holders of six shares, have entered into a new contract with the defendants, under the Acts of 1871 and 1872, by which their claims as preferred stockholders under the Act of 1855 were surrendered and extinguished. The case stands as if forty-two shares only had been issued, for they only were outstanding when the dividend was declared.

And it is no objection to the demand that it covers a period of time during which no profits were realized by the company. The proviso to the fourth section of the Act of 1855, that dividends should not be paid except out of the net earnings of the road, nor until after payment of all interest due on the company's debts, had reference only to the time when the dividends should be paid to the stockholders. The amount of them, and the time when they were to commence, were fixed by the enacting clause of the section. They were to be eight per centum per annum, payable semi-annually, "from the time of payment for the stock," and before any payment to the holders of the common stock.

The dividend the defendants declared in July 1873, proved them to be in possession of ample funds. Unquestionably, the time had arrived when it was legitimate for the plaintiff to call on them to perform their contract. And her claim was properly presented in this action. This is not, in any aspect, an effort to coerce the policy or control the discretion of the directors. It is not an attempt to enforce the declaration of a dividend. That has been declared, but the defendants have made a mistaken distribution of money they admitted to be in their hands, and which legally belonged to the plaintiff. The authorities relied on by the court below, adequately proved that an action of assumpsit was the plaintiff's appropriate remedy.          Judgment affirmed.