Schaad *v*. Hotel Easton Company, Appellant.

Argued January 8, 1952. Before DREW, C. J., STERN, STEARNE, BELL and MUSMANNO, JJ.

*Clyde W. Teel,* with him *Fackenthal, Teel & Danser,* for appellant.

*Charles P. Maxwell,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, March 24, 1952:

The question here presented is whether a dissenting owner of shares of preferred stock of a business corporation can be compelled, under a proposed scheme of recapitalization, to accept common stock in exchange for his holdings, with loss of his right to the then accrued, cumulative, undeclared and unpaid dividends.[1]

Hotel Easton Company was incorporated in 1924 under the General Corporation Act of April 29, 1874, P. L. 73. According to its articles of incorporation its

---

[1] In the case of a merger or consolidation the *Act of March 31, 1941, P. L. 13,* provides for an appraisal and payment to a dissenting shareholder of the fair value of his shares. The *Act of May 23, 1949, P. L. 1662,* provides for a similar appraisal and payment to a shareholder dissenting from a proposed change in the preferences, or special or relative rights, of the shares of any class, but this act was an amendment of the Act of May 3, 1933, P. L. 227, and therefore, does not relate to business corporations since the Act of May 3, 1933, P. L. 227 was repealed as to business corporations by the Business Corporation Law of May 5, 1933, P. L. 364. The *Act of September 26, 1951, (Act No. 366)* provides for a like appraisal and payment to a shareholder dissenting from an amendment of the articles of incorporation which would limit or deny any preemptive right of any outstanding shares. Therefore, apart from the fact that the latter two acts were passed subsequent to the event giving rise to this suit, these three acts have no present application.

capital structure consisted of 2500 shares of preferred stock of the par value of $100 each, and 2500 shares of common stock without nominal or par value; subsequently, by proper corporate action, the authorized preferred stock was increased to 7500 shares and the common stock to 3750 shares; of these amounts 7158 shares of preferred and 3039 shares of common were outstanding in 1949 when the present bill of complaint was filed. Under a provision of the by-laws purchasers of the preferred stock were given the right to purchase one share of common with every two shares of preferred, so that most of the shareholders owned both preferred and common stock, although some of them owned only preferred and others only common. The by-laws of the company, adopted at the time of the incorporation, established the different classes of stock, vested the voting powers exclusively in the common stock, and provided that the preferred stock should carry a dividend at the rate of seven per cent per annum, cumulative, to be paid before any dividend was paid on the common. The preferred stock certificates likewise stated, in conformity with resolutions adopted by the shareholders, that the holders of such stock should be entitled to receive, when and as declared, from the surplus or net profits of the corporation, yearly dividends at the rate of seven per cent per annum, and no more, payable as the Board of Directors might determine, such dividends to be cumulative and to be paid before any dividend was paid on the common stock; also that in the event of liquidation the holders of the preferred stock should be entitled to be paid in full both the par amount of their shares and the unpaid dividends accrued thereon before any amount should be paid to the holders of the common stock. Until the year 1942 the company suffered annual losses, with the resulting accumulation of a large

deficit; since then, however, substantial profits have been earned each year. The company has never declared any preferred stock dividends, so that in 1949 there were accrued, undeclared and unpaid dividends on each of the outstanding shares of preferred stock in the amount of $157.50.

On February 7, 1949, a meeting was had of the preferred and common shareholders at which a plan of recapitalization and change of share structure was adopted. The plan involved an increase in the authorized common stock without nominal or par value from 3750 to 75000 shares, and the conversion of each of the outstanding shares of the preferred, together with the accrued dividends thereon, into ten shares of the increased common, the preferred shareholders to surrender and exchange their shares accordingly; to effect these changes the articles of incorporation and by-laws were to be appropriately amended. The plan was adopted by a vote of approximately 60 per cent of the outstanding preferred stock and about the same percentage of the outstanding common stock; only a small number of shares of preferred and common stock were voted against the plan; the remaining shares were not voted either for or against.

Carl E. Schaad, the owner of 141 shares of the preferred and 79 shares of the common stock, appeared at the meeting, objected to the adoption of the plan and did not vote in favor of it, nor did John H. West, the owner of 12 shares of the preferred stock, vote in its favor. These two shareholders brought the present bill against the corporation for an injunction to restrain it from proceeding with the plan. The corporation having filed an answer, the court decreed that "the proposed plan of recapitalization, change of share structure and proposed amendments to the charter . . . are null and void, insofar as they assume to destroy

the rights of plaintiffs, and others similarly situated, to the accrued cumulative dividends upon their preferred stock." From that decree defendant now appeals.

The relation between a corporation and a preferred shareholder is one of contract, especially as to the preferential rights secured by the terms of the issue: *West Chester and Philadelphia R. R. Co. v. Jackson, Adm'x,* 77 Pa. 321, 327; Savidge on Corporations (2nd ed.), vol. 1, p. 486, §609; Fletcher, Cyclopedia Corporations, vol. 11, pp. 727, 730, §5295. In the present instance the contract was embodied in the by-laws of the company, the resolutions under which the stock was issued, and the provisions set forth in the stock certificates themselves; also entering into the contract were the statutes then in existence, for "no principle is more firmly established than that the laws which were in force at the time and place of the making of the contract enter into its obligation with the same effect as if expressly incorporated in its terms": *Beaver County Building and Loan Association v. Winowich,* 323 Pa. 483, 489, 187 A. 481, 484. Since the contract thus established would be materially changed by the proposed plan of recapitalization, the obvious question arises as to the right or authority of the corporation to effect such change against the opposition of dissenting shareholders.

The legality of the plan is asserted by defendant on three grounds: (1) by virtue of the power to amend the by-laws; (2) by virtue of the Act of May 21, 1923, P. L. 288, which was in force at the time when the company was incorporated and the stock was issued; (3) by virtue of the Business Corporation Law of May 5, 1933, P. L. 364.

(1) The by-laws of the company provide that "These by-laws may be amended, altered, repealed or

added to at any regular meeting of the stockholders, or at any special meeting of the stockholders called for that purpose, by affirmative vote of a majority of the stock issued, outstanding and entitled to vote." Defendant contends that, since the rights and preferences appertaining to the preferred stock were set forth in the by-laws, those rights and preferences were subject to the reserved power of amendment. The short answer to this contention is to be found in *Roblin v. Knights of the Maccabees*, 269 Pa. 139, 112 A. 70, and *Bechtold v. Coleman Realty Company*, 367 Pa. 208, 79 A. 2d 661, which enunciated the clear and definite principle that a general reservation of the power to amend the by-laws of a corporation cannot be construed as permitting the abrogation of substantial rights of property of the shareholders or the alteration of their contractual relations inter se, but only the changing of regulations governing the administration and conduct of the corporation's internal affairs; provisions affecting property or contractual rights cannot be repealed or altered without the consent of the parties whose interests are thereby impaired. No amendment of defendant's by-laws, therefore, could legally change the preferential rights accorded to the preferred stock unless the holder of the stock assented thereto.

(2) At the time the preferred stock was issued, there was in existence the Act of May 25, 1921, P. L. 1159. That act provided that a corporation could create various kinds of common stock and various kinds of preferred stock, either at the time of its incorporation or at any later time, and with such designations, rights, privileges, limitations, preferences, and voting powers, as might be approved and adopted by the shareholders. Section 3 of the act provided that "The rights, privileges, and terms and conditions of any class of

stock, . . . shall not thereafter be subject to alteration or change *without the consent of all the holders of such class of stock,* except as may be otherwise provided by the certificate of incorporation or by the resolutions authorizing the issue of the same." (Italics supplied.) But, in order to overcome that provision, defendant relies upon the Act of May 21, 1923, P. L. 288, which also was in force when the company was incorporated and which provided that a corporation might at any time authorize and issue capital stock of any class or kind with or without nominal or par value, or "change or convert any or all of the shares of its authorized or outstanding capital stock into one or more classes and kinds, either with or without nominal or par value, as to the shares of any given class or kind, *in the same manner and by the same stock vote as may now or may hereafter be prescribed by law for increasing the capital stock of corporations.*" (Italics supplied.) Defendant argues that this act impliedly repealed the 1921 act because it authorized a change of shares of the corporation's capital stock into one or more classes and kinds by a mere majority vote although, defendant contends, such change might involve an alteration in the rights and privileges of the class of stock undergoing conversion. No such implied repeal was, in our opinion, effected, for, when the later act is properly construed, there would not seem to be any irreconcilability between the provisions of the two statutes.[2] The phraseology of the 1923 act is extremely ambiguous; when read at first blush it might seem, by the generality of its language, to confer authority for the conversion of any class or kind of stock into any other class or kind, for

[2] The 1921 act was not *expressly* repealed, as to business corporations, until, and by, the Business Corporation Law of 1933, nor section 3 of the act absolutely until, and by, the Act of May 23, 1949, P. L. 1662.

example, preferred into common stock, upon the approval merely of the persons holding the larger amount in value of the stock, that being then the prescribed statutory requirement for increasing the capital stock of corporations. That the grant, however, of such a broad power was not intended becomes clear upon a closer study of the statute. The Act of July 12, 1919, P. L. 914, had, for the first time in Pennsylvania, given to corporations the right to issue stock without nominal or par value, and the Act of 1923 was apparently passed solely for the purpose of enlarging the authority granted to corporations by that statute by giving them the right not only to issue stock without nominal or par value but the additional right to convert stock with nominal or par value into stock without nominal or par value or vice versa, that is, to convert preferred stock with par value into preferred stock without par value, or vice versa, or common stock with par value into common stock without par value, or vice versa, but not preferred stock of either kind into common stock of either kind. This relation of the Act of 1923 to the Act of 1919 is evidenced by the proviso in the Act of 1923 making all stock without nominal or par value created under the provisions of the act subject to all the provisions contained in the 1919 Act,[3] and is further indicated by the fact that the Act of May 3, 1933, P. L. 227, joined and substantially incorporated in the one act the provisions of both the 1919 and 1923 Acts, evidently treating them as interrelated and interdependent, and at the same time repealing them. The Act of 1923 made no reference whatever to those rights and preferences of different classes of stock which section 3 of the Act of 1921 was designed to

---

[3] This proviso was declared unconstitutional in *Commonwealth v. Wayne Sewerage Company*, 287 Pa. 42, 134 A. 390.

protect. It is our opinion, therefore, that the 1923 act cannot be construed as having the wide scope attributed to it by defendant, but must rather be given the restricted interpretation inferable from its apparent purpose and its relative position in the stream of legislation dealing with the stock of corporations. Thus interpreted it does not conflict with or override the Act of 1921 and furnishes no legal justification for an attempt to compel a dissenting preferred shareholder to accept a non-preferred stock in exchange for his holdings. Moreover, even were it construed otherwise, it would still fall far short of impliedly sanctioning the cancellation of accumulated, unpaid dividends at the time any conversion of preferred into common stock might be effected under its authority. Merely because a statute may authorize a corporation to refashion its capital structure or reclassify its stock by altering preferential provisions or other terms would not, in the absence of a clear expression of intention to the contrary, warrant an interpretation that would permit the deprivation of dissenting preferred shareholders of their rights in regard to accrued, unpaid, cumulative dividends: *Roberts v. Roberts-Wicks Co.,* 184 N. Y. 257, 77 N. E. 13; *Davison v. Parke, Austin & Lipscomb, Inc.,* 285 N. Y. 500, 35 N. E. 2d 618; *Wiedersum v. Atlantic Cement Products, Inc.,* 25 N. Y. S. 2d 496; *Keller v. Wilson & Co.,* 21 Del. Ch. 391, 190 A. 115; *Consolidated Film Industries, Inc., v. Johnson,* 22 Del. Ch. 407, 197 A. 489; *Patterson v. Mills,* 216 N. C. 728, 6 S. E. 2d 531; *Sutton v. Globe Knitting Works,* 276 Mich. 200, 267 N. W. 815.

(3) Finally, much reliance is placed by defendant upon the Business Corporation Law of 1933. That act (section 801(4)) provides that a business corporation may from time to time amend its articles "To increase or diminish its authorized capital stock, or to reclassi-

fy the same by changing the number, par value, designations, preferences, or relative, participating, optional or other special rights of the shares, or the qualifications, limitations, or restrictions of such rights, or by changing shares with par value into shares without par value, or shares without par value into shares with par value, . . . and in any and as many other respects as desired, provided that the articles, as so amended, would be authorized by this act as original articles of incorporation." Section 804 provided that if a proposed amendment would make any change in the preferences, or special or relative rights of the shares of any class, or limit or deny the existing preemptive rights of the shares of any class, the holders of the outstanding shares of the class or classes affected adversely by the proposed amendment should be entitled to vote as a class on such amendment regardless of any limitations stated in the articles on the voting rights of such class or classes. Section 805 provided that, unless the articles required a greater vote, an amendment making such a change would be adopted upon receiving the affirmative vote of the holders of at least a majority of the outstanding shares in each class of shares entitled to vote as a class thereon. But section 5 of the act provided that "This act shall not impair or affect any . . . right accruing, accrued, or acquired, . . . prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, . . . as fully and to the same extent as if this act had not been passed." Therefore it is clear that, since the interest of a preferred shareholder in cumulative, accrued dividends, even if not a "vested property" right is certainly at least a contractual right, this section prevents the Business Corporation Law from serving as authority for the proposed cancellation of the large amount of unpaid dividends which had accumulated at the time of de-

fendant's attempt to compel the conversion of plaintiffs' preferred stock.

Because, then, of the saving clause in the act, it would seem unnecessary to discuss at length the interesting question as to whether the grant of such an authority to the corporation would, in any event, be unconstitutional in view of the prohibition in both our Federal and State Constitutions of the passage of any law impairing the obligation of contracts. It is true that Article XVI, section 10 of the Constitution of Pennsylvania provides that "The General Assembly shall have the power to alter, revoke or annul any charter of incorporation . . . whenever in their opinion it may be injurious to the citizens of this Commonwealth, in such manner, however, that no injustice shall be done to the corporators", and a similar provision is contained in the General Corporation Act of 1874, section 4, and in the Business Corporation Law of 1933, section 211. But, while there is a conflict of authority on the subject, the preferable view would seem to be that this reserved power of the State to alter or amend charters of incorporation, although wide, is not unlimited, and that it can properly be exercised only to amend a charter so far as it represents a contract between the corporation and the State, and not in respects as to which it constitutes a contract between the corporation and the shareholders or between the shareholders themselves. That is the view presently taken of the extent of the reserved power by many, if not most, of the courts which have considered the question.[4] Any attempted statutory authorization of a cor-

---

[4] For example: *Coombes v. Getz*, 285 U. S. 434, 441, 442; *Yoakam v. Providence Biltmore Hotel Co.*, 34 F. 2d 533; *Keller v. Wilson & Co.*, 21 Del. Ch. 391, 190 A. 115; *Consolidated Film Industries, Inc., v. Johnson*, 22 Del. Ch. 407, 197 A. 489; *Wheatley v. A. I. Root Co.*, 147 Ohio St. 127, 69 N. E. 2d 187; *Yukon Mill &*

poration to destroy the preferential right to the accrued dividends would seem to involve either an unconstitutional deprivation of property, or an impairment of the obligation of contracts, or both, and this notwithstanding the reserved power of amendment. Moreover, since, under our Constitution, the reserved power may be exercised only when, in the opinion of the General Assembly, the charter is injurious to the citizens of the Commonwealth, and then only in such manner that no injustice shall be done to the corporators, the power is thereby limited in two respects: (1) there must be involved a matter of public concern, and (2) the just rights of the shareholders must be protected. Whether these conditions are met in any given case is inherently a judicial question: *Pennsylvania R. R. Co. v. Philadelphia County*, 220 Pa. 100, 113, 68 A. 676, 678; *Manheim Borough v. Manheim Water Co.*, 229 Pa. 177, 180, 78 A. 93, 94. Here neither of them is met, and therefore, apart from all other considerations, the reserved power of amendment furnishes no aid to defendant in the present controversy.

To summarize our conclusions, they are that neither the amendment clause of the by-laws, nor the Act of May 21, 1923, P. L. 288, nor the Business Corporation Law of May 5, 1933, P. L. 364, supplies any authority to defendant to compel plaintiffs to exchange their preferred for common stock under the proposed plan of recapitalization, involving, as it does, the cancellation of the cumulative dividends accrued on their stock. We need scarcely add that courts are concerned only with the legality of the power asserted, not with the wisdom of the policy pursued. It may well be that

*Grain Co. v. Vose*, 201 Okla. 376, 206 P. 2d 206; *Sutton v. Globe Knitting Works*, 276 Mich. 200, 267 N. W. 815; *Hueftle v. Farmers Elevator*, 145 Nebr. 424, 16 N. W. 2d 855; *Garey v. St. Joe Mining Co.*, 32 Utah 497, 91 P. 369.

the proposed plan would be beneficial rather than prejudicial to plaintiffs' interests, but the law gives to them alone the right to decide that question.

Decree affirmed; the parties to bear their respective costs.