# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Serota                       :
                                     :
              v.                     :    No. 2073 C.D. 2016
                                     :    Argued:  April 6, 2017
London-Towne Homeowners              :
Association,                         :
                    Appellant        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED:  April 27, 2017**

London-Towne Homeowners Association (Association) appeals from the January 5, 2016 Order of the Court of Common Pleas of Allegheny County (common pleas) that granted Matthew Serota's (Serota) Motion for Partial Judgment on the Pleadings (Motion) and entered judgment in Serota's favor on counts I and II of Serota's Complaint and Civil Action (Complaint).[1]  The Complaint sought declaratory judgment and injunctive relief in order to invalidate the Association's amendment (Amendment) to the Declaration of Covenants,

---

[1] On February 23, 2017, Serota filed an Application for Relief requesting expedited consideration of this matter, to which the Association did not object, which this Court granted by Order dated March 8, 2017.

Conditions, and Restrictions (Declaration) of the London-Towne Plan of Lots (Community). The Amendment provided that, instead of one vote *per lot/unit*, the Association would count one vote *per owner* without regard to the number of lots/units owned. On appeal, the Association argues that common pleas erred in declaring the Amendment invalid, null and void because it had the authority, pursuant to the Declaration and the Nonprofit Corporation Law of 1988[2] (NPCL) to make the Amendment. Discerning no error, we affirm.

## I.      Background

The Community is a planned community of 70 townhouses that was recorded on June 13, 1978. The Association, along with the developer/declarant, Concept Realty Enterprises, Inc. (Declarant), filed the Declaration with the Recorder's Office of Allegheny County on June 26, 1979. The Declaration was recorded in Deed Book Volume 6125, page 513, and contains the following language:

> NOW, THEREFORE, Declarant hereby declares that all of the Numbered Lots in the London-Towne Plan of Lots and all future subdivisions thereto shall be held, sold and conveyed subject to the following Restrictions, Covenants and Conditions which are for the purposes of protecting the value and desirability of, and which shall

_____

[2] 15 Pa. C.S. §§ 5101-5998. Although the Association cites to the NPCL, it relies on the provisions applicable to non-profit corporations from 1972 to 1988, when those provisions were renumbered by the NPCL. The Association relies upon 15 Pa. C.S. § 7901(a) (1972), which provided, in relevant part, that a non-profit corporation could amend its articles "(2) [t]o modify any provision of the articles relating to its term of existence" and "(5) [i]n any and as many other respects as desired." These provisions were renumbered as 15 Pa. C.S. § 5911(a) in 1998 and remained the same until 2013, when (a)(5) was amended to read "[t]o make any and as many other changes as desired." 15 Pa. C.S. § 5911(a)(5). For ease of reference, we will cite to this provision as the Association does in its brief as Section 7901 of the NPCL, 15 Pa. C.S. § 7901 (1972).

run with the said Numbered Lots and be binding on all parties having any right, title or interest in the Numbered Lots, their heirs, successors and assigns, and shall inure to the benefit of each owner thereof.

(R.R. at a18.)  Article IV, Sections 1 and 2 of the Declaration address membership and voting rights and provide, in relevant part:

> Section 1. Every Owner of a Lot which is subject to assessments shall be a member of the Association.  Membership shall be appurtenant to and may not be separated from ownership of any Lot subject to assessment.
>
> Section 2. . . . Class A members shall be all Owners, with the exception of the Declarant, and shall be entitled to one (1) vote for each Lot owned. . . .

(Id. at a21.)  Article X, Section 3 of the Declaration addresses Amendments and states, in pertinent part:

> The covenants and restrictions of this Declaration shall run with and bind the land, for a term of twenty (20) years from the date this Declaration is recorded, and after which time they shall be automatically extended for successive periods of ten (10) years, unless by a unanimous vote of all Owners joined in by the mortgagees, if any, it is agreed to terminate.  This Declaration may be amended during the first twenty (20) years by an instrument signed by not less than ninety (90%) per cent of the Lot Owners, and thereafter by an instrument signed by not less than seventy-five (75%) per cent of the Lot Owners.  Any amendment must be recorded.

(Id. at a32.)  Article X, Section 1 of the Declaration provides:

> . . . [A]ny owner[] shall also have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and charges now or hereinafter imposed by the provisions of this Declaration. . . .

(Id. at a31.)  In 1998, the Association adopted the Bylaws of London Towne Homeowners Association (Bylaws), Article 1, Section 1.1 of which states:

These Bylaws provide for the governance of the Association pursuant to the requirements of §5306 of the Pennsylvania Uniform Planned Community Act[3] (Act), 68 Pa. C.S. § 5306], with respect to the Community created by the recording of the Declaration among the land records . . . in Deed Book Vol. 6125 at Page 513.

(R.R. at a34.) Article I, Section 1.5 of the Bylaws provides that "[e]xcept as expressly provided [in the Bylaws], in the Declaration, or in the Act," the provisions of the NPCL govern the Association. (Id.) Article II, Section 2.8 of the Bylaws governs voting and states: "[e]ach Unit shall be entitled to a single vote at

---

[3] Section 5306 of the Act provides:

**(a) Mandatory provisions.--**The bylaws of the association shall provide for all of the following:

(1) The number of members of the executive board and the titles of the officers of the association.

(2) Election by the executive board of a president, treasurer, secretary and any other officers of the association the bylaws specify.

(3) The qualifications, powers and duties, terms of office and manner of electing and removing executive board members and officers and filling vacancies.

(4) Which, if any, of its powers the executive board or officers may delegate to other persons or to a managing agent.

(5) Which of its officers may prepare, execute, certify and record amendments to the declaration on behalf of the association.

(6) The method of amending the bylaws.

**(b) Other provisions.--**Subject to the provisions of the declaration, the bylaws may provide for any other matters the association deems necessary and appropriate.

68 Pa. C.S. § 5306.

all meetings of the Association." (Id. at a36.) Amending the Declaration is addressed in Article VII, Section 7.2 of the Bylaws, which provides:

> Any two (2) officers or Executive Board members of the Association may prepare, execute, certify and record [A]mendments to the Declaration properly adopted by the Unit Owners on behalf of the Association.

(Id. at a47.)

Serota is a Class A member and owns 12 lots in the Community each with a townhome.[4] (Compl. ¶¶ 3-4, 6, 24.[5]) Prior to October 17, 2014, he could cast 12 votes on any Association matter. (Id. ¶ 52.) Beginning in August 2014, other Association members sought to amend Article IV, Section 2 of the Declaration (addressing Class A member voting rights), changing the one vote per lot owned rule to add: ". . . When more than one (1) Lot is owned by the same Owner, that Owner shall be a member, but in no event shall more than one (1) vote be cast with respect to any number of Lots owned by that Owner." (Compl. ¶¶ 31-34; R.R. at a81.) At the time it was proposed, the Amendment would have reduced Serota's voting strength from 12 out of 70 votes to 1 out of 59 votes. These owners collected forms, which were attached to the Complaint as Exhibit C (Forms), and which on their face stated only "Homeowners in Agreement to Amendment Article X General Provisions, Section 3," the unit number, printed name, and signature of the person signing the Form. (Compl. ¶ 35; Ex. C, R.R. at a51-a79.) Serota and several other owners did not consent to the effort to amend the Declaration, and no

---

[4] Serota resides in New York, and between December 2009 and July 2014, he individually acquired 11 properties, and he and his wife acquired the 12th property. (Compl. ¶¶ 2-5.) He subsequently acquired three additional lots after October 17, 2014.

[5] The Complaint and attached exhibits can be found at pages a3 to a115 of the Reproduced Record.

more than 53 owners out of the 59 owners signed these Forms. (Compl. ¶¶ 36-37.) On October 17, 2014, the Association, recorded the Amendment with the Allegheny County Department of Real Estate in Deed Book 15768, page 552. (Compl. ¶ 38; R.R. at a81.) The recorded Amendment indicated that it was amending Article IV, Section 2 of the Declaration, not Article X, Section 3. (R.R. at a81.) Additionally, the Amendment was executed and certified by only the Association's President. (Compl. ¶ 39; R.R. at a81.) Without advising Serota that the Amendment had been recorded, the Association refused to record more than one vote from Serota at its next meeting. (Compl. ¶¶ 45-48.)

## II. Proceedings before Common Pleas

Serota filed the Complaint asserting that the Amendment was invalid raising four arguments. First, the Amendment violated the Association's Bylaws because the Forms signed by the owners agreeing to amend the Declaration incorrectly referenced an amendment of *Article X, Section 3*, instead of *Article IV, Section 2*. (Compl. ¶ 56.) Second, the Amendment was executed and recorded only by the Association's President, and the Bylaws require that *two* Association officers or executive board members must "prepare, execute, certify and record" *any* amendment to the Declaration. (Compl. ¶ 57.) Third, the Amendment violated Section 5219(d) of the Act, 68 Pa. C.S. § 5219(d) (emphasis added), which provides that "without *unanimous consent of all unit owners affected*, no amendment may create or increase special declarant rights, [or] *alter . . . voting strength* in the association allocated to a unit," because it was not passed with the unanimous consent of all of the Community's unit owners. (Compl. ¶ 55.) Fourth, the Amendment is contrary to Serota's contractual rights to one vote per unit

6

owned, acquired through the Declaration and the Bylaws, and the NPCL because it diminishes Serota's property and contractual rights without his consent. (Id. ¶¶ 58-59, 61.) For these reasons, Serota sought a declaration that the Amendment was invalid and that he was entitled to one vote for each unit he owned. (Id. ¶ 60, Count I Wherefore Clause.) Serota also requested injunctive relief to prevent the Association from enforcing the Amendment and requiring the Association to remove the Amendment from the Association's books and records, as well as Allegheny County's records. (Compl. ¶¶ 64-66, Count II Wherefore Clause.)

The Association filed an Answer,[6] stating that Section 5219(d) conflicts with the procedures set forth for amending the Declaration in Article X, Section 3 of the Declaration, which authorizes such amendments with a 75% vote of the owners. (Answer ¶¶ 9, 15, 26.) The Association further asserted that, pursuant to Section 5102 of the Act, 68 Pa. C.S. § 5102, Section 5219 of the Act does not apply because the Community was created prior to the Act's effective date. (Answer ¶¶ 9, 15-16, 55.) With respect to the claims that the owners did not know what they were amending, the Association averred that the proposed Amendment was attached to the Forms when presented to the owners for their signature. (Id. ¶¶ 33-35, 56.) The Association also averred that the Amendment *was* properly executed and recorded because it was executed by four board members when they signed the Forms agreeing to the Amendment that were then attached to the recorded Amendment. (Id. ¶¶ 39, 57.) Finally, the Association replied that the Amendment did not interfere with any of Serota's property or contractual rights. (Id. ¶¶ 58-59.)

---

[6] The Association also filed counterclaims, which were related to Serota's actions when he was the President of the Association's Board and to which Serota had filed an Answer and New Matter. However, the Association voluntarily discontinued those claims without prejudice so that the Order became a final appealable order.

Serota filed the Motion with a brief in support, and the Association filed a brief in opposition. Following oral argument, common pleas granted the Motion, entered judgment in Serota's favor, and directed the Association take certain actions in removing the Amendment from the Association's books and Allegheny County's records. Thereafter, in its opinion in support of its Order, common pleas explained that the Amendment was invalid for several reasons.

First, the Amendment was executed and recorded by only the Association's President. However, the Bylaws require that two officers or executive board members must "prepare, execute, certify and record" any amendment to the Declaration. (Common pleas op. (Op.) at 5-6.)

Second, the Association did not include any New Matter in its Answer and did not plead any specific facts describing how or when the proposed Amendment was disseminated to the owners, that the owners were aware that they were agreeing to amend *Article IV, Section 2* of the Declaration, rather than *Article X, Section 3,* or that the owners actually read the proposed Amendment prior to signing such that they actually "adopted" that Amendment as required by the Declaration. (Op. at 6-7.) Common pleas noted that the Association, at oral argument, acknowledged that the forms signed by the owners erroneously referenced a different portion of the Declaration than the one being amended. (Id. at 7.)

Third, the Declaration's amendment procedures did not supersede Section 5219(d) of the Act because the Association had agreed to be bound by the Act in its Bylaws, and, at the time the Act and Bylaws became effective, the Declaration would have required 90 percent of the owners to agree to amend the Declaration, not the 75 percent that would have become effective in 1999. (Op. at 10.)

8

Common pleas further held that the Association incorrectly assumed that a non-profit corporation could alter Serota's voting rights without his consent by amending its governing document even though those rights were set forth in the Declaration, run with and bind the land, and are enforceable in law and equity. (Id.) After reviewing precedent rejecting attempted amendments to a corporation's governing documents that infringed upon or limited existing contractual or property rights, including, Schaad v. Hotel Easton Company, 87 A.2d 227 (Pa. 1952), Roblin v. Supreme Tent of the Knights of Maccabees of the World, 112 A. 70 (Pa. 1920), and Huddleson v. Lake Watawga Property Owners Association, 76 A.3d 68 (Pa. Cmwlth. 2013), common pleas held that such principles applied to the NPCL and the Association. (Op. at 11-12.) Common pleas concluded that Serota had obtained a property and/or contractual right to have one vote for each lot he owned through the Declaration as it existed when he acquired the lots, and the Association could not, by amending its governing documents, diminish those rights without his consent. (Id. at 12.) The Association now appeals.

## III. Discussion

"Our review of [common pleas'] decision granting a motion for judgment on the pleadings considers whether the court committed an error of law or whether unresolved questions of material fact remain outstanding." Pfister v. City of Phila., 963 A.2d 593, 596 n.7 (Pa. Cmwlth. 2009). Rule 1034 of the Pennsylvania Rules of Civil Procedure provides that, "[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings" and "[t]he court shall enter judgment or order as shall be proper on the pleadings." Pa. R.C.P. No. 1034. Relevant here, the pleadings

9

include the complaint and an answer and any documents properly attached thereto. Pfister, 963 A.2d at 597. "[T]he party moving for judgment on the pleadings must admit the truth of all the allegations of his adversary and the untruth of any of his own allegations that have been denied by the opposing party." Id. (citations omitted). If there are material facts in dispute, judgment on the pleadings cannot be entered. Id.

The Association argues common pleas erred in invalidating the Amendment because Section 5219(d)(1) of the Act does not apply and because the NPCL gave it the authority to enact the Amendment. In particular, it argues that Section 5219(d)(1) does not apply pursuant to Section 5102(b) of the Act because under the latter provision, Section 5219 cannot "invalidate specific provisions contained in existing provisions of the declaration." 68 Pa. C.S. § 5102(b). The Association further asserts that it had the authority to enact the Amendment under Section 7901(a) of the NPCL. It maintains that the principles set forth in Schaad, and applied by this Court to non-profit corporations in Huddleson, are inapplicable because they apply only to the amendment of a corporation's governing documents that would impair a substantial property and/or contractual right involving a pecuniary interest, and no such right was involved here.

Serota responds the attempted Amendment is not valid under either Section 5219(d) of the Act or any law in place prior to the Act's enactment. He argues that pursuant to Section 5102(d)(1)(i) of the Act, in order for the Amendment to be valid, it had to be authorized by some body of law, either the Act or some law that predated the Act. Serota maintains that Section 5219(d) of the Act requires any amendment affecting voting strength to be by unanimous consent, which did not occur here, and that, pursuant to Schaad and Huddleson, the NPCL does not allow

10

a non-profit corporation to amend its governing documents to diminish the voting power of another member without that member's consent.

The Community and Association were established before the Act was enacted and, therefore, we must review the Act's provisions regarding when it may be applied retroactively. Sections 5102(b) and (d) of the Act address the retroactive application of the Act and state, in pertinent part:

> (b) Except as provided in subsection (c) [(which is not applicable to the Community)], section[] . . . 5219 (relating to amendment of declaration), . . . appl[ies] to all planned communities created in this Commonwealth before the effective date of this subpart; but th[at] section[] appl[ies] only with respect to events and circumstances occurring after the effective date of this subpart and *do[es] not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities*.
> . . . .
> (d) **Amendments to declarations, bylaws, plats and plans.--**
> (1) In the case of amendments to the declaration, bylaws and plats and plans of any planned community created before the effective date of this subpart:
>
> (i)   *If the result accomplished by the amendment was permitted by law prior to this subpart, the amendment may be made either in accordance with that law,* in which case that law applies to that amendment, or may be made under this subpart.
> (ii)  If the result accomplished by the amendment is permitted by this subpart and was not permitted by law prior to this subpart, the amendment may be made under this subpart.
>
> (2) *An amendment to the declaration*, bylaws or plats and plans *authorized by this subsection to be made under this subpart must be adopted in conformity with applicable law* and with the procedures and requirements specified by the document being amended. If any such amendment grants to any person any rights, powers or privileges permitted by this subpart, all correlative obligations, liabilities and restrictions in this subpart also apply to that person.

68 Pa. C.S. § 5102(b), (d) (italicized emphasis added). Reading these provisions together, they provide that if there was an existing provision in a declaration that predated the Act related to amending that declaration, the Act's provisions would not supersede that provision automatically (Section 5102(b)); however, where an amendment to the declaration, bylaws, or plat is proposed, the result of that amendment must be authorized either by the Act or some other law that existed prior to the Act's enactment (Section 5102(d)). Because this matter involves an amendment to the Declaration, we will apply Section 5102(d) to determine if the Association was authorized to enact the Amendment by either the Act or some other law.

Section 5219(d)(1) of the Act governs amendments to, *inter alia*, a planned community's declaration and provides, in relevant part:

> (1) Except to the extent expressly permitted or required by other provisions of this subpart, *without unanimous consent of all unit owners affected, no amendment may . . . change the . . . voting strength in the association allocated to a unit* or the uses to which any unit is restricted. . . .

68 Pa. C.S. § 5219(d)(1) (emphasis added). The Amendment to the Declaration changed the voting strength of Serota's units without unanimous consent and, therefore, was not authorized by the plain language of Section 5219(d) of the Act. Thus, in order for the result of the Amendment to be "in accordance with th[e] law" as required by Section 5102(d)(1)(i) of the Act, some other law that existed prior to the Act must provide authority for the Amendment.

The Association argues that Section 7901 of the NPCL provides the necessary authority for the Amendment. At the time of the Association's creation, a non-profit corporation could amend its articles to "modify any provision of the

12

articles relating to its term of existence" or "[i]n any and as many other respects as desired." 15 Pa. C.S. § 7901(a)(2), (5) (1972). However, in Schaad, which involved a for-profit corporation, the Supreme Court held that a subsequent amendment to a corporation's governing documents, there the corporation's bylaws, *could not diminish* the substantial property or contractual rights that a shareholder had acquired, under previously existing bylaws, other governing documents, or the shares themselves, without the shareholder's consent. Schaad, 87 A.2d at 229-30. The Court further held that the general reservation of a corporation to amend its bylaws cannot be construed as permitting the abrogation of the substantial property or contractual rights of its shareholders without the shareholders' consent. Id. (citing Bechtold v. Coleman Realty Co., 79 A.2d 661, 663 (Pa. 1951); Roblin, 112 A. at 70). This Court, in Huddleson, applied Schaad's reasoning to a homeowner's association incorporated under the NPCL. In doing so, we held that "provisions affecting property or contractual rights cannot be repealed or altered without the consent of the parties whose interests are thereby impaired." Huddleson, 76 A.3d at 72 (quoting Schaad, 87 A.2d at 230). While the question in Huddleson involved amendments that required a property owner to pay assessments for her property who was otherwise not obligated to do so, this Court's application of Schaad to a homeowner's association is applicable to the present matter.

The Association asserts that the Amendment did not impair the type of rights involved in Schaad because voting rights are a matter of internal governance and do not involve any pecuniary interest. Corporate provisions may, generally, be divided into "those that are mere regulations governing the conduct of the internal affairs of the corporation" and those that are "in the nature of a contract [that is]

13

designed to vest property rights *inter se*[7] among all stockholders." <u>Bechtold</u>, 79 A.2d at 663. The former "may be repealed, altered and amended at the will of the majority unless a greater vote is required by" the document or a statute; the latter "cannot be repealed or changed without the consent of the other parties whose rights are affected." <u>Id.</u>

The voting rights sought to be changed by the Association through the Amendment in this case fall within the latter provision, which may not be altered without the consent of the parties whose rights would be affected. Voting rights are considered the basic and fundamental right of a shareholder. <u>Reifsnyder v. Pittsburgh Outdoor Adver. Co.</u>, 173 A.2d 319, 322 & n.8 (Pa. 1961). Serota obtained the right to one vote for each lot owned through the Declaration and Bylaws that were in the existence at the time he acquired those lots. (Article IV, Section 2 of the Declaration, R.R. at a21; Article II, Section 2.8 of the Bylaws, R.R. at a36.) These rights, by the terms of the Declaration, run with the land and are "binding on all parties having any right, title or interest in the Numbered Lots, their heirs, successors and assigns, and shall inure to the benefit of each owner thereof." (R.R. at a18.) These documents are, in effect, contracts between the Association and its members and the members with each other. Moreover, although the Association argues there is no pecuniary interest involved in an owner's voting rights, Serota, as the owner of at least 12 units, must pay assessments, fees, and charges on each of those units. Prior to the Amendment, Serota had a proportional vote in the financial decisions of the Association that represented the financial impact such decisions would have on his 12 units. The

---

[7] "*Inter se*" is defined as "(Of a right or duty) owed between the parties rather than to others." Black's Law Dictionary 896 (9th ed. 2009).

14

diminishment of that proportional say in the financial decisions and the financial impact he will experience as a result does involve his pecuniary interests. For these reasons, common pleas did not err in relying on <u>Schaad</u> and <u>Huddleson</u> to invalidate the Amendment.[8]

## IV.    Conclusion

Common pleas did not err in concluding that the Amendment was invalid because it was not authorized under the Act or the NPCL. Accordingly, the Order is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[8] Because we conclude that the Amendment is invalid for these reasons, we will not address whether the Amendment also is invalid because it was only executed and recorded by the Association's President.

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew Serota                :

                                    :

           v.               :     No. 2073 C.D. 2016

                                    :

London-Towne Homeowners  :

Association,                :

               Appellant    :

## **O R D E R**

**NOW**, April 27, 2017, the Order of the Court of Common Pleas of Allegheny County, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

_____

**RENÉE COHN JUBELIRER,** Judge