**Budd HESS, Michael Polesovsky, Kenneth Herr, George Derby and Lee Crowell, Appellants,**

v.

**BARTON GLEN CLUB, INC.**

**Budd HESS, Michael Polesovsky, Kenneth Herr, George Derby and Lee Crowell**

v.

**BARTON GLEN CLUB, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 14, 1998.

Decided Oct. 5, 1998.

Peter C. Layman, Bangor, for appellants.

Gerard J. Geiger, Stroudsburg, for appellee.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Budd Hess, Michael Polesovsky, Kenneth Kerr, George Derby, and Lee Crowell (collectively referred to as the Owners), appeal from an order of the Court of Common Pleas of Monroe County, which granted in part and denied in part the motion for post-trial relief of Barton Glen Club, Inc. (Association). The Association cross-appeals from the same order.

The development of Barton Glen is a 280 lot residential community located in Pocono and Jackson Townships, in the Pocono Mountain region of Pennsylvania. The Owners each own an improved property in Barton Glen, which serves as the respective Owner's principal residence. The Association is the homeowners' association for Barton Glen, and it owns and maintains a park, a lake with a beach, a clubhouse with an adjacent swimming pool, a 300 foot section of Merry Hill Road, and the entrance ways to the development.[1] The Association also owns 29 undeveloped lots in the development.

Persons who own property in Barton Glen are assessed dues by the Association. Between 1981 and 1995, the dues assessed for an improved lot have ranged from $190 to $339 per year. In July of 1995, the Association voted to assess each lot owner in Barton Glen dues of $230 per lot for 1996, which is the year at issue in this appeal.

The property of each Owner, with the exception of Crowell, is subject to the following deed covenant:

Each lot included in this agreement shall be subject to an annual lien and charge of $30.00 and the Buyer, his, her, or their

---

1. With the exception of a few hundred feet of Merry Hill Road and the entrance ways to the development, the roads in Barton Glen are owned by the townships.

heirs, successors, executors, administrators and assigns agree to pay Seller, its successors and assigns, the sum of Thirty ($30.00) Dollars for each of such lots, annually on the first day of May hereafter, for lake and park privileges, whether the same are exercised or not. The title to all land designated as lake and park is expressly retained by the Seller. The Buyer, his, her, or their heirs, successors, executors, administrators, and assigns further agree that the use of said beaches is subject to approval of the user for membership in BARTON GLEN CLUB, INC. hereinabove provided, and in the case of a guest or member of the family, provided they shall be approved for honorary membership in BARTON GLEN CLUB, INC., and to compliance with the rules and regulations from time to time promulgated by the Seller, its successors and assigns, it being understood that the charge for such lake and park privileges in addition to constituting a lien against each lot included in this agreement, shall constitute a debt which may be collected by suit in any Court of competent jurisdiction, and upon the conveyance of any of the land described herein, successive owner or owners shall, from the time of acquiring title, be held to have covenanted and agreed to pay Seller, its successors or assigns, all charges ... as provided for in this paragraph.

The Seller, its successors and assigns, shall be the sole owner of said charge and lien for lake and park privileges and shall maintain same in such manner as Seller in its sole discretion may deem advisable and the Buyer, for himself, herself, or their administrators and assigns shall use said lake and parks in accordance with the rules and regulations of the Seller ... and the Buyer ... does hereby recognize in the Seller ... the right to deny the use of said lake and parks for violation of such rules and regulations without impairing the obligation to pay the charge for the same as herein provided.

(Statement of Undisputed Facts, paragraph 11; Reproduced Record (R.R.) at R3–4.) Unlike the other Owners, the preceding assessment covenant is not included in Cro-well's chain of title, nor is there any reference to the Association in his chain of title at all.

On November 3, 1995, the Owners filed a declaratory judgment action in the Common Pleas Court, claiming that the 1996 assessment of $230 per lot exceeded the $30.00 charge for lake and park privileges established in the deed covenants. The Association filed an answer and averred in New Matter that $30 of the $230 was for lake and park privileges and that the remaining $200 represented each members' contribution to the maintenance of the Barton Glen common areas and the Association's administrative costs. The Association asked the Court to enter a declaratory judgment that it could assess the Owners more than $30 each year for the cost of maintaining common areas and its administrative costs.

Thereafter, the Association filed a motion for summary judgment and, in that motion, the Association asked the Court to determine whether it could charge more than $30 per year in dues and whether the Owners are "obligated to pay their proportionate share of the costs of maintaining the Association's common areas." (Association's Brief in Support of Summary Judgment at 17.)

On June 10, 1996, the Common Pleas Court granted summary judgment insofar as it concluded, generally, that the Association could levy a separate assessment for the upkeep of the common areas of Barton Glen. And, the Court declared that, under the deed covenant, the Association could not charge more than $30 per year for lake and park privileges. The Common Pleas Court denied summary judgment beyond that, however, and explained that disputed questions of material fact existed with regard to the amount of the Association's assessment for maintenance of the common areas and its administrative costs:

[T]he proportion of these expenses which relate to lake and park privileges as opposed to the other common areas is unclear. It also remains in dispute as to whether the 29 lots owned by [the Association] are common areas, as [Owners] contend that they are barred from using that

land in any manner. [Owners] also dispute the fact that the lake, swimming pool, and clubhouse are common areas open to the use of all property owners because an additional charge is assessed to those property owners who wish to use the facilities. These and other disputed facts make it impossible to enter summary judgment ... beyond a finding that [the Association] is entitled to charge no more than $30 per year for lake and park privileges and that a separate charge may be assessed for maintenance and upkeep of certain common areas that are of common necessity....

(Common Pleas Court's opinion, 6/10/96, at 7.)

On December 3, 1996, the Common Pleas Court held a bench trial to determine the propriety of the Association's 1996 assessment for the maintenance of Barton Glen's common areas. After reviewing the evidence, the court held that the Association's 1996 assessment was invalid, and determined that the Association was limited to charging the Owners (1) $30 per year for lake and park privileges, and (2) their pro rata share of the costs of maintaining Merry Hill Road. The court limited Crowell's liability to paying a share of the costs related to Merry Hill Road only, for the reason that his deed did not include covenants obligating him to pay the $30 lake and park fee. The court concluded that the Association could not assess any of the Owners for additional maintenance and administrative expenses connected to the park, lake, clubhouse and undeveloped lots for the following reasons:

Merry Hill Road is the only common area which is of common necessity. A road is of common necessity because it provides the property owners with access for the use of their land and it also provides a way for them to leave their land in the event of an emergency situation. To the extent that the general association expenses and professional service expenses are related to the upkeep of Merry Hill Road, [the Owners] are responsible for their pro rata share. While the pool/club-

house and the lake/park may be convenient recreational facilities and while the lake/park and 29 wooded lots may be aesthetically pleasing to the eye, they are not areas of common necessity since there is no evidence that they are necessary to [the Owners'] use and enjoyment of their land.

(Common Pleas Court's opinion, 2/13/97, at 14–15.) (Footnotes omitted.)

The court also rejected the Association's argument that the Owners were equitably estopped from challenging the assessment for the reason that the Owners or their predecessors in title had paid dues to the Association in prior years and had received benefits from the Association. The Common Pleas Court stated that misrepresentation was an element of equitable estoppel, and that the Owners' voluntary assessment payments could not be considered a misrepresentation.

The Association then filed a motion for post-trial relief asserting that the Common Pleas Court failed to consider that the entryways to Barton Glen were owned by the Association, made various errors of law in denying the Association the right to assess the Owners for the common areas, and that the court failed to consider the Pennsylvania Uniform Planned Communities Act.[2] The court granted the motion insofar as it agreed that the Association could assess the Owners for their share of the costs of maintaining the entrances to the development in addition to the assessment for Merry Hill Road, but denied the motion in all other respects.

On August 18, 1997, the Association filed an appeal with this Court, and on September 3, 1997, the Owners filed a cross appeal to challenge the Common Pleas Court's decision to grant the post-trial motion on the entranceway issue. We consolidated the appeals sua sponte and designated the Owners as the Appellants. However, the parties stipulated that the Association, even though it was designated the Appellee, should be permitted to file its brief first, because the Association was raising numerous issues and the Owners were raising only a single issue. Thereafter, we entered an order modifying

---

**2.** 68 Pa.C.S. §§ 5101–5414. The Pennsylvania Uniform Planned Communities Act was adopted in 1996 as the Act of December 19, 1996, P.L. 1336.

the briefing schedule to permit the Association to file its brief first.

On appeal, the Association[3] raises the following issues: (1) may the Association assess the Owners for their pro rata costs of maintaining the common areas, where the Owners deeds refer to the existence of a homeowners' association and the deeds do not prohibit such a charge; (2) the determination of the Common Pleas Court's is contrary to *Meadow Run & Mountain Lake v. Berkel*, 409 Pa.Super. 637, 598 A.2d 1024 (1991); (3) the Owners are equitably estopped from challenging the right of the Association to charge an assessment exceeding $30 per year; and (4) that by denying it the right to assess the lot owners for the costs of maintaining the common areas the Association will be precluded from complying with the requirements of the Pennsylvania Uniform Planned Communities Act.[4]

A homeowners' association, like the Association here, may be viewed as a miniature government, charged with managing the common areas and facilities of a residential development, and as such is dependent upon the collection of assessments to maintain the common facilities. *Meadow Run.* When the owners of property in a residential development are permitted to use the common areas of a development, there is an implied agreement to accept a portion of the cost of maintaining those facilities. *Id.* And, where a deed is silent on whether a homeowners' association has the authority to make such an assessment, the homeowners may be assessed their proportionate costs of common improvements. *Fogarty v. Hemlock Farms Community Association, Inc.*, 685 A.2d 241 (Pa.Cmwlth.1996). Even if an owner's chain of title makes no reference to a homeowners' association, we have held that the owner is nonetheless obligated to pay a share of the costs of maintaining common areas managed by a homeowners' association for the reason that

> [the owners] are the beneficial users of the common areas of the development and ... are responsible for the cost of repair, maintenance and upkeep of the common areas. If we were to find to the contrary, lot owners would be able to avoid their duty to pay assessments, and because associations would be powerless to operate, the facilities of a development would fall into disrepair. Thus, we hold that a property owner who purchases property in a private residential development who has the right to travel the development roads and to access the waters of a lake is obligated to pay a proportionate share for repair, upkeep and maintenance of the development's roads, facilities and amenities.

*Spinnler Point Colony Association, Inc. v. Nash*, 689 A.2d 1026, 1029 (Pa.Cmwlth.1997).

In the instant case, the Association maintains various common areas including a portion of Merry Hill Road, the entryways to the development, a clubhouse, a swimming pool, and a park (consisting of a lake, picnic area, beach, and basketball courts). The Owners have the right to use the common areas of Barton Glen, although members must identify themselves to use the pool and members must rent the clubhouse for private parties.

All the Owners, except Crowell, have language in their chains of title referring to the existence of the Association. The only covenants concerning the Association's power to assess for common areas in the Owners' deeds, again excepting Crowell's,

---

3. Neither the Association nor the Owners attached any of the Common Pleas Court's three opinions in this matter to their briefs. The Owners' omission is particularly egregious because they rely on the findings of fact in the Common Pleas Court's February 13, 1997 opinion as the correct chronological statement of this case. Further, the Association compounded this error by not including any of the opinions in its reproduced record. We remind the parties that Pa. R.A.P. 2111(b) requires an appellant to append to the brief "a copy of any opinions delivered by any court or other government unit below relat-

ing to the order or other determination under review...."

4. Although the Owners took an appeal in response to the Common Pleas Court's decision to grant the Association's post-trial motion and allow the Association to assess the Owners for the maintenance of the entryways, the Owners do not raise that issue in their brief. The Owners, instead, respond to the issues raised by the Association.

concerns each Owners' obligation to pay an annual $30 park and lake fee. However, under *Meadow Run, Fogarty,* and *Spinnler Point,* the Association may nonetheless assess the Owners a proportionate share of the costs of maintaining all the common areas of Barton Glen. Furthermore, Crowell is liable for his pro rata share of the cost of maintaining the commons as well, regardless of the fact that the Association is not mentioned in his chain of title.[5] *Spinnler Point.* Therefore, we hold that all of the Owners are responsible for a proportionate share of the costs of maintaining all of Barton Glen's common facilities.

The Owners argue, however, that, under *Birchwood Lakes Community Association, Inc. v. Comis,* 296 Pa.Super. 77, 442 A.2d 304 (1982), the Association may not charge an assessment beyond the $30.00 lake and park assessment in the covenants, because their deeds provide a specific amount the Association may charge. They further state that the holdings of *Meadow Run* apply only in cases where there is no specific assessment provided in a landowner's deed. We disagree with this view.

In *Birchwood,* the Superior Court construed two covenants: the first assessed each lot owner a $10.00 annual general assessment and a beach privilege fee which, combined, was to be not less than $30.00; and the second covenant set a $45.00 annual fee that could be increased by the Grantor or its successors. The Superior Court reasoned that the first covenant limited the association to a $30.00 annual assessment, and the Court rejected the argument that additional monies could be assessed for the commons under the theory of quasi-contract. But, regarding the second covenant, the Superior Court concluded that the language allowing additional sums to be collected by the Grantor's successors permitted the association to seek additional assessments.

In the present case, unlike *Birchwood,* the Owners' deeds set a fixed limit on the charge for lake and park *privileges* only. There is no ceiling on general assessments in the deeds that would restrict the Association's ability to charge property owners a fee for the pro rata share of the costs of maintaining Barton Glen's common areas. In contrast, the first covenant in *Birchwood* fixed the combined assessment for general maintenance **and** beach privileges at $30.00. Therefore, *Birchwood* is distinguishable from the instant matter and we hold the *Meadow Run* cases are controlling here.

■ The Owners further argue that, in contrast to the *Meadow Run* cases, membership in the Association is optional and that property owners in Barton Glen have no absolute right under their deeds to use the common areas. The Owners assert that their deeds provide that persons are only allowed to use the lake and park on the condition that he or she is approved for membership in the Association, focusing on the following language in covenant: "the Buyer, his, her, or their heirs, successors, executors, administrators, and assigns further agree that the use of said beaches is subject to approval of the user for membership in the [Association]." Additionally, they point to language in the covenant that grants the Association "the right to deny the use of said lake and parks for violation of such rules and regulations without impairing the obligation to pay the charge for the same as herein provided." The Owners believe that, in the absence of an absolute right to use Barton Glen's common areas, they have no corresponding duty to pay for those amenities.

We cannot agree with the Owners' claim that membership in the Association is optional. Our review of the covenants does not reveal any language which may be reasonably construed to give the Owners the option to join or not to join a homeowners' associa-

---

**5.** We believe that Crowell is obliged to pay his proportionate share of the cost of maintaining the lake and the park, despite the absence of the covenant from his chain of title requiring him to pay the $30.00 lake and park fee. In our view, the $30.00 fee in the other Owners' titles is only a limitation on what the Association may charge them for use of the lake and park, and that the lake and park are not for the exclusive use of those property owners whose titles include the covenant. The fact that the limitation is not in Crowell's chain of title means only that the Association is not bound to charge a fixed assessment for Crowell's use of the lake and park.

tion. While the Owners' argument relies on the "subject to the approval of the user for membership [in the Association]" language in the covenants, we do not believe that that clause supports their view, since the record indicates that, at the time the covenants were drafted, the Association was not the homeowners' association for Barton Glen. The record shows that the Seller, Block Land, Inc., and its successor, Leisure Equities Corp., originally owned the common areas, and the covenants indicate that those corporations initially functioned as the development's homeowners' association.[6] The record also shows that the title to the commons was not conveyed from Leisure Equities to the Association until 1977 (Association's Exhibit 6), and we surmise that prior to 1977 the Association's role was quite limited, possibly functioning only as a swim club.

Most important, any ambiguity in the deed over the question of whether a property owner has a right to use the Association's common areas was resolved in March of 1982, when the Association entered into a settlement with the lot owners in each section of Barton Glen. The settlement, which was recorded in the Monroe County Recorder of Deeds Office, granted an easement to Barton Glen property owners, specifically, "the use, liberty and privilege of, and passage in and to the roads, amenities and common facilities" which were conveyed from Leisure Equities to the Association. Although the Common Pleas Court found that the settlement was not in the Owners' chain of title, we believe that any owner may nevertheless demand access to all the common areas on the ground that each owner has an easement for use of the commons as evidenced in the settlement agreement.

We also note that the Association's Bylaws provide that "all owners of a lot or lots within the Barton Glen development shall be members of the association." (Article IV of the Bylaws.) In our view, the Association, through its Bylaws, has declared that all property owners are members of the Association, precluding it from denying any proper-

ty owner the use of the development's common areas on the ground that he or she has not been approved for membership in the Association. In addition, none of the Owners assert that the Association has ever denied them the use of the beaches, lake, park or any other common area.

■ Furthermore, we do not believe that the language in the deed covenants allowing the Association to deny access to the lake and the park as a sanction for violating membership rules renders the *Meadow Run* cases inapplicable here. *Meadow Run* recognized that a deed could properly grant a property owner the right to use a common facility subject to binding rules and regulations regarding that right. In our view, the power to impose a binding rule, by necessity, includes the power to enforce the rule. *See Neshaminy Federation of Teachers v. Neshaminy School District*, 501 Pa. 534, 535, 462 A.2d 629, 635 (1983) ("The power to regulate conduct, of course, would be illusory absent the power to enforce rules through the imposition of ... discipline.") Moreover, the Association's rules and regulations governing the lake and park are not onerous, but rather emphasize safety considerations and littering. (Bylaws, Rules and Regulations, Section IV, Recreational Facilities, paragraphs A–E; R.R. at R34–36.) The Association's bylaws provide for warnings and fines for repeated violation of its rules, not banishment from the commons, and property owners have the opportunity for a hearing before the Association's Board of Directors. (Bylaws, Rules and Regulations, Section IX; R.R. at R37–38.) Therefore, this argument must fail.

■ The Owners argue further that Common Pleas correctly determined that the Owners could only be assessed for those common areas deemed to be of "common necessity." We do not agree.

The *Meadow Run* cases do not make any distinction between facilities that are of common *necessity* and those that are purely recreational, and our research has failed to reveal any case law supporting the proposition that property owners may only be as-

---

**6.** The covenants state that Block Land owned the lake and the park, owned the monies collected for lake and park privileges, had the power to approve architectural plans, and the power to abate nuisances and enforce the covenants against property owners.

sessed for improvements deemed to be necessary. Plainly, one of the advantages of owning property in a modern residential development governed by a homeowner's association in a resort area is that such developments provide and maintain recreational facilities and other amenities far beyond those which would be considered absolutely necessary for the community to function. They add value to the individual owner's property and enhance the quality of the community. For the above reasons, even though some of the recreational facilities such as the lake and beach among the other amenities may be classified as luxuries and are not absolutely necessary for the community to function, we nonetheless conclude that the Association may assess the Owners to maintain these types of common facilities. As in *Spinnler Point*, to hold otherwise would allow the Association's existing facilities to fall into disrepair and dis-

courage the continued improvement of Barton Glen. Therefore, the Common Pleas Court erred in determining that the Association could assess the Owners only for those facilities of common necessity.

Accordingly, the Common Pleas Court's order is reversed.[7]

### ORDER

NOW, October 5, 1998, the order of the Court of Common Pleas of Monroe County in the above-captioned matter is hereby reversed.

---

7. Because of our disposition of this matter, we need not consider the Association's equitable estoppel argument or the applicability of the Uniform Planned Communities Act to this case.