**Lynn HUDDLESON, Appellant**

v.

**LAKE WATAWGA PROPERTY OWNERS ASSOCIATION.**

Commonwealth Court of Pennsylvania.

Argued March 12, 2013.

Decided May 20, 2013.

Reargument Denied July 8, 2013.

Publication Ordered Aug. 8, 2013.

was established.

Ronnie J. Fischer, Honesdale, for appellant.

Karyn D. Rienzi, Philadelphia, for appellee.

BEFORE: PELLEGRINI, President Judge, SIMPSON, Judge (P.), and COLINS, Senior Judge.

OPINION BY President Judge PELLEGRINI.

Lynn Huddleson (Huddleson) appeals from the Wayne County Common Pleas Court's (trial court) July 5, 2012 order denying her summary judgment motion and granting the summary judgment motion of Lake Watawga Property Owners Association (Association), James Branley, Thomas Dirvonas, George Zevan and Diane Zevan making the Association's Constitution and bylaws applicable to her.

This case arises out of the development of land around Lake Watawga in Wayne County. In 1940, the Lauderbaugh family purchased Lake Watawga (Lake) and the surrounding land and, after laying out lots in a plan on the Lake's western shore, began selling the lots in 1949. The deeds for the first lots sold included water rights with respect to the Lake. In 1951, the purchasers of the initial lots and the Lauderbaughs executed an agreement which required any future deeds issued by the Lauderbaughs to contain easements and restrictions consistent with the initial leases, but prohibited the inclusion of water rights in those deeds. Instead, the Lauderbaughs agreed to execute a license agreement for water rights for subsequent purchasers. However, it does not appear from the record that a license agreement was ever executed.

The agreement also required, as a condition precedent, that future purchasers of land along the shore of the Lake be members of the newly formed Lake Watawga Association (Old Association). Membership qualifications included that a member be a prospective or current owner of property along the shore of the Lake, and that the member be approved by the Lake Watawga Association Board of Directors. The agreement between the initial purchasers and the Lauderbaughs was the subject of litigation which resulted in the Pennsylvania Supreme Court invalidating the agreement, holding that the provision in the agreement limiting alienation of Lake shore property to association members unreasonably limited the free alienation of property. *See Lauderbaugh v. Williams*, 409 Pa. 351, 186 A.2d 39 (1962).

In 1969, development began on the separate neighboring Lake Pocono Colony Village Development on a 39–acre non-lakefront parcel of land conveyed by widowed Mrs. Lauderbaugh to Asher Seip, Jr. and Jacob Seip. On the eastern shore of the Lake is the Lakeview Estates Development. The Lake Watawga Homeowners Association (Pocono Association) is the

property owners' association for that development and it owns the Lake and dam.

In 1972, Huddleson's father acquired an approximate one acre parcel of real property on the western shore of Lake Watawga which included deeded Lake rights. Other than access to the Lake, owned by the Pocono Association, that deed did not have any covenant, easement or agreement imposing any obligations on the owner to pay any common expenses or give the owner right to use the private roads. The property is bordered on the west by and directly accesses Tobyhanna Road, State Route 3001. It does not have frontage on any private road.

In 1974, the Association was formed and incorporated under the Nonprofit Corporation Law.[1] Huddleson's father was one of the founding members of the Association, and Huddleson collaborated with her father in the drafting of the Association's Constitution and bylaws. In contrast to the Old Association, which had required members to own property along the shore of the Lake, the Association membership was open to all property owners who had deeded Lake rights, including back-lot properties in the Lake Pocono Village Development whose deeds included such rights. Membership in the Association was voluntary.

The Association's 1974 Constitution and bylaws provided that the Constitution or bylaws "may be amended at any meeting of the Association by a two-thirds vote, a quorum being present[;]" a quorum being defined as at least twelve (12) members in good standing. Reproduced Record (R.R.) at 34a. No evidence was offered to establish that the Association owns any common elements or real property, with the exception of a piece of property donated to the Association by a property owner in satisfaction of outstanding assessments. The Association maintains private roads. Although there is reference in several deeds to a lease of the Lake to the Association, no written lease was produced. Evidence was offered demonstrating that the Association did contribute to the repair of the Lake dam and expended money to stock the Lake with fish. In 2003, Huddleson acquired the subject property upon her father's death, but did not join the Association.

In 2005, the Association amended the 1974 Constitution and bylaws to make Association membership mandatory and delete existing restrictions on the disbursement of funds for items such as road improvement, snowplowing, beach improvement, erection of signs and other items that benefited less than all of the members. After the 2005 amendment, assessments were raised from $10.00 to $300.00 per year. In 2010, the Association amended its Constitution and bylaws by combining them into a single document and changed the membership qualifications by removing the requirement that property owners hold deeded Lake rights, and instead, implemented geographical boundaries. The amendments also changed voting rights of the Association members and the manner in which assessments were determined. The existing right of one vote per member was changed to one vote for each "Class A Unit"[2] owned by that member requiring

---

1. It is unclear from the record if the Association is in any way related to the former Lake Watawga Association. No documents were produced demonstrating that the Pennsylvania Department of State had been notified of the dissolution of the entity or that it had been "absorbed" into the Association. Further, Huddleson and three others claim to be current members and officers of the original Lake Watawga Association.

2. A "Class A Unit" is defined as "[i]mproved property (property including one home)."

"Class A Unit" owners to pay an assessment for each "Class A Unit." In contrast, owners of "Class B Units" paid a single fee at 90% of the standard assessment, but had only one vote, regardless of the number of "Class B Units" owned. Owners of both a "Class A Unit" and a "Class B Unit" were assessed one fee at the standard assessment rather than separate fees for each. The Association sought dues and late fees from Huddleson.

In January 2011, Huddleson filed a declaratory judgment action seeking to invalidate the 2005 and 2010 amendments to the Association's Constitution and bylaws. Huddleson's action also raises claims for breach of contract and breach of the covenant of good faith and fair dealing. Both parties filed motions for summary judgment.

The trial court granted the Association's summary judgment motion and denied Huddleson's summary judgment motion, and dismissed with prejudice Huddleson's remaining claims. It found, among other reasons, that:

> The law applicable in this matter is the Nonprofit Corporation Law of 1972.

> Pursuant to 15 Pa.C.S. § 5544(a), a nonprofit corporation is entitled to 'levy dues or assessments, or both, on its members, if authority to do so is conferred by the bylaws, subject to any limitations therein contained.' Therefore, the ... Association was permitted, pursuant to 'old' law, to assess dues and apportion those dues to its members. Pursuant to [the] Nonprofit Corporation Law, '[t]he members entitled to vote shall have the power to adopt, amend and repeal the bylaws of a nonprofit corporation.' 15 Pa.C.S. § 5504(a). This provision does not place any limitations on the ability of the ... Association to amend its bylaws. Further, the Nonprofit Corporation Law does not create any prohibition on the alteration of the way votes are allocated to the Association members. The ... Association was permitted, pursuant to 'old' law, to amend its bylaws.

Huddleson then filed this appeal.[3]

On appeal, Huddleson argues that the trial court erred in declaring valid the sets of amendments made to the Association's Constitution and bylaws under the Uniform Planned Community Act (Act)[4] be-

R.R. at 346a. A "Class B Unit" is defined as "unimproved property." *Id.*

3. Our review of a trial court order granting or denying a motion for summary judgment is limited to determining whether the trial court abused its discretion or committed an error of law. Summary judgment is appropriate only when, after examining the record in a light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lutz v. Tanglwood Lakes Community Association, Inc.*, 866 A.2d 471, 473 n. 4 (Pa.Cmwlth.), *appeal discontinued*, 583 Pa. 508, 880 A.2d 502 (2005) (citations omitted).

4. 68 Pa.C.S. §§ 5101–5414. Although Huddleson concedes that she "did not seek to have the trial court declare that the Association is not a valid unit owners association

under the [Act], [she] nonetheless pointed out that the [Act] does not control the issue of the validity of the ... amendments because the Association is not a 'unit owners association' as defined by the [Act]." Huddleson Brief at 47–48. Because that issue is not properly before us and is not critical to our disposition of this case, we decline to address it. We note, though, that "Planned community" is defined as "[r]eal estate with respect to which a person, by virtue of ownership of an interest in any portion of the real estate, is or may become obligated by covenant, easement or agreement imposed on the owner's interest to pay any amount for real property taxes, insurance, maintenance, repair, improvement, management, administration or regulation of any part of the real estate other than the portion or interest owned solely by the person...." 68 Pa.C.S. § 5103.

cause she did not consent to be bound by their terms.

Generally, the Act applies to planned communities created after 1997 when the Act became effective. Parts of the Act apply retroactively to planned communities created prior to the effective date of the Act. Section 5102(b) of the Act sets forth the specific sections of the Act that apply retroactively. That section also makes it clear that "those sections apply only with respect to events and circumstances occurring after the effective date of this subpart and **do not invalidate specific provisions contained in existing provisions of the declaration, bylaws or plats and plans of those planned communities.**" 68 Pa.C.S. § 5102(b) (emphasis added). Section 5102(d) of the Act directly addresses the Act's applicability to declaration and bylaw amendments. That section states:

(1) In the case of amendments to the declaration, bylaws and plats and plans of any planned community created before the effective date of this subpart:

(i) **If the result accomplished by the amendment was permitted by law prior to this subpart, the amendment may be made either in accordance with that law, in which case that law applies to that amendment, or may be made under this subpart.**

(ii) If the result accomplished by the amendment is permitted by this subpart and was not permitted by law prior to this subpart, the amendment may be made under this subpart.

(2) An amendment to the declaration, bylaws or plats and plans authorized by this subsection to be made under this subpart must be adopted in conformity with applicable law and with the procedures and requirements specified by the document being amended. If any such amendment grants to any person any rights, powers or privileges permitted by this subpart, all correlative obligations, liabilities and restrictions in this subpart also apply to that person.

68 Pa.C.S. § 5102(d) (emphasis added).

The Association contends that it was established in 1974 under the Nonprofit Corporation Law of 1972 which was renumbered and amended in 1988 (Nonprofit Corporation Law), 15 Pa.C.S. §§ 5101–6145.[5] It argues that there is nothing in the Nonprofit Corporation Law that would prohibit the actions taken by the Association in amending the Constitution and bylaws to make it applicable to all members. Because the Nonprofit Corporation Law would not have prohibited the Association's actions, it argues that the Association properly amended its Constitution and bylaws.

Huddleson argues that the passage of the amendments violated the principles set forth in *Schaad v. Hotel Easton Company*, 369 Pa. 486, 492, 87 A.2d 227, 230 (1952), wherein the Pennsylvania Supreme Court held that "provisions affecting property or contractual rights cannot be repealed or altered without the consent of the parties whose interests are thereby impaired." The trial court rejected Huddleson's position that *Schaad* prohibited the Association from amending its Constitution and bylaws, instead distinguishing *Schaad* based upon the fact that it involved a for-

---

**5.** The Nonprofit Corporation Law of 1988 is a renumbering and amendment of the Nonprofit Corporation Law of 1972, former 15 Pa. C.S. Pt. III Art. B (relating to domestic nonprofit corporations). Section 5106(a) of the Nonprofit Corporation Law of 1988 provides in relevant part that "this subpart and its amendments are intended to provide uniform rules for the government and regulation of the affairs of corporations ... regardless of the date or manner of incorporation or qualification, or of the issuance of any evidences of membership in or shares thereof." 15 Pa. C.S. § 5106(a).

profit corporation rather than a non-profit, non-stock homeowners' association. However, we disagree because no matter who is affecting your rights—a non-profit or a for profit—unless you consent or have an interest in the property that makes your participation in the Association necessary, then any bylaw imposing such obligations is ineffective.

There is no dispute that Huddleson did not give her consent, so the only issue is whether she has an interest that obligated her to pay dues or assessments to the Association. In *Spinnler Point Colony Association, Inc. v. Nash*, 689 A.2d 1026, 1029 (Pa.Cmwlth.1997), we held that "a property owner who purchases property in a private residential development who has the right to travel the development roads and to access the waters of a lake is obligated to pay a proportionate share for repair, upkeep and maintenance of the development's roads, facilities and amenities." Further, we have held that "[e]ven if an owner's chain of title makes no reference to a homeowners' association, we have held that the owner is nonetheless obligated to pay a share of the costs of maintaining common areas managed by a homeowners' association...." *Hess v. Barton Glen Club, Inc.*, 718 A.2d 908, 912 (Pa.Cmwlth.1998), *appeal denied*, 558 Pa. 623, 737 A.2d 745 (1999).[6]

Unlike in *Spinnler* and *Hess*, Huddleson has no interest in the development roads requiring her to pay for common improvements. There is nothing in her deed that imposes any obligation upon her to maintain any property that the Association maintains. She is not obligated to maintain the private road because she does not abut it and has no legal right to use it, her access being from a public road. While she does have Lake access, the Pocono Association is the owner of the Lake, not the Association, and any contributions by the Association to the Pocono Association are voluntary. Moreover, there is nothing in the Nonprofit Corporation Law that gives it the right to bind non-members or make membership mandatory absent a shared obligation.[7]

For the above reasons, the trial court's order granting the Association's summary judgment motion is reversed as to the issue of the applicability of the amendments to Huddleson, and the trial court's order denying Huddleson's summary judgment motion is reversed and summary judgment is granted in her favor on the claim that the Association by-laws are not applicable to her.

### ORDER

AND NOW, this *20th* day of *May*, 2013, the Wayne County Common Pleas Court's (trial court) July 5, 2012 order granting

6. Consistent with this opinion, we agree with the trial court that because she was not an Association member, Huddleson could not assert a breach of contract claim that the Association improperly amended its bylaws to which she was not a party.

7. The dissent has two objections to the majority opinion. First, it contends that certain facts are in dispute. Ignoring that both parties have filed motions for summary judgment indicating that they do not believe any facts are in dispute, none of those purportedly disputed facts were relied on by the majority in arriving at its decision. Second, it contends that this case is at odds with our unpublished opinion in *Boguslavsky v. Lake Watawga Property Owners Association*, 2010 WL 9513109 (Pa.Cmwlth., No. 1511 C.D.2009, filed March 3, 2010) because it held that the landowner was liable for maintenance responsibilities for the Lake. Ignoring that landowner in that case did not contend that he was not part of a "planned community," the Association's non-ownership of the Lake and lack of maintenance responsibility was not placed in evidence or raised in that case.

the Lake Watawga Property Owners Association's summary judgment motion is reversed as to the issue of the applicability of the amendments to Lynn Huddleson. Further, the trial court's denial of Lynn Huddleson's summary judgment motion is reversed and summary judgment is granted in her favor on the claim that the Association's bylaws are not applicable to her.

## CONCURRING and DISSENTING OPINION BY Judge SIMPSON.

I agree with the majority that summary judgment in favor of the Lake Watawga Property Owners Association (Association) must be reversed. I respectfully disagree, however, that summary judgment must be entered in favor of Lynn Huddleson (Huddleson). I take this position because of the existence of outstanding issues of fact. *See* Pa. R.C.P. No. 1035.2. Instead, I would remand to the trial court for further proceedings.

In particular, it is not clear whether the 2005 and 2010 amendments to the Association's Constitution and bylaws were recorded, or when they became effective, if at all. *See* Section 5504(a) of the Nonprofit Corporation Law of 1988, 15 Pa.C.S. § 5504(a). In turn, a question remains as to the timeliness of Huddleson's 2011 challenges to the amendments. The trial court did not address these issues.

Of more concern, the majority's decision seems at odds with an unreported case dealing with the same Association, *Boguslavsky v. Lake Watawga Property Owners Association*, 2010 WL 9513109 (Pa. Cmwlth., No. 1511 C.D.2009, filed March 3,

2010) (Pellegrini, J.) (Association permitted to assess fees against property owners whose deed and chain of title grant them the right to use the common easements, including the private road and the lake).[1] It is undisputed that Huddleson enjoys deeded lake rights.

These concerns, together with the almost impenetrable factual background of developments at this lake, militate against summary judgment for Huddleson.

---

1. Significantly, *Boguslavsky v. Lake Watawga Property Owners Association*, 2010 WL 9513109 (Pa.Cmwlth. No. 1511 C.D.2009, filed March 3, 2010) (Pellegrini, J.), represents the persistent view of this Court. Its holding is consistent with *Spinnler Point Colo-* *ny Association, Inc. v. Nash*, 689 A.2d 1026 (Pa.Cmwlth.1997) and *Hess v. Barton Glen Club, Inc.*, 718 A.2d 908 (Pa.Cmwlth.1998), two cases which the majority tries to distinguish.