# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deep Meadows Civic Association,      :
                 Appellant      :
                            :
          v.              :
                            :    No. 1258 C.D. 2015
Edward Trusello                :    Argued: May 13, 2016


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION BY
JUDGE COVEY                             FILED: June 3, 2016


      Deep Meadows Civic Association (Association) appeals from the Delaware County Common Pleas Court's (trial court) March 27, 2015 order reinstating its November 26, 2014 order entering judgment in Edward Trusello's (Trusello) favor and against the Association, and denying Trusello's counterclaim. The sole issue for this Court's review is whether the trial court erred by concluding that Trusello is not liable to the Association for fees and, therefore, erred by denying the Association's claims for breach of contract, unjust enrichment and attorney's fees. After review, we affirm.

      Trusello owns the real property located at 1225 Sycamore Mills Road, Glen Mills, Pennsylvania (Property). Trusello purchased the Property on December 23, 1998. The Property's deed (Deed) describes the Property, in relevant part, as:

> ALL THAT CERTAIN parcel of land situated in the Township of Edgmont, County of Delaware, State of Pennsylvania, being bounded and described according to a Plan of Section No. 1 of 'Deep Meadows', [(Plan)[1]] dated

---

[1] Original Record, Plaintiff's Trial Ex. P1.

March 22, 1976 and last revised April 20, 1976 prepared by Catania Engineering Associates, Inc., Consulting Engineers, Chester Pennsylvania . . . .

. . . .

CONTAINING 4.00 acres of land more or less. BEING known as Parcel 'C' on said Plan.

Original Record (O.R.), Defendant's Trial Ex. D5. The Deed does not reference the existence of a homeowners' association, provide the right for Trusello to use the community open space or expressly obligate Trusello to pay fees for the benefit of such use.[2]

The Association alleged in its Amended Complaint that "[p]ursuant to a Declaration of Trust executed on January 28, 1975 [Declaration], several co-partners known as 'Deep Meadows Associates' purchased 67 acres of land, now known as 'Deep Meadows Development [(Development).]'" Amended Complaint at 1. The Association further averred that "[p]ursuant to the bylaws of the Deep Meadows Civic Association . . . every person or entity who is a record owner of a fee interest in any property or lot in the [Development] shall be a member of the Association." *Id.* at 2. The Association also alleged that Trusello had failed to pay Association fees in the amount of $50.00 per year between 1999 and 2003, $45.00 per year between 2004 and 2010, and $50.00 in 2011. The fees were purportedly assessed to cover insurance and lawn care for an approximately 12-acre parcel of open area (Open Area) and to cover the Association's post office box and business costs. Importantly, the Property is one of several lots located on the outer edge of the Plan and is not accessed by any of the Development roads.[3] *See* O.R., Plaintiff's Trial Ex. P1. Further, the Property

---

[2] Notably, the Property's prior owners' deed similarly fails to reference the existence of a homeowners' association.

[3] Because Trusello's Property is not within the marked Deep Meadows subdivision and he does not access his home by the development entrance, the Association did not assess Trusello fees relative to the cost of electric to operate a street light at the Development entrance.

is not directly adjacent to the Open Area. In order to access the Open Area, Trusello would either have to walk across his neighbor's property, or travel from his Property on a public road, turn onto another public road, enter the Development's entrance and walk across an unmarked path between two private homes.

In Trusello's Answer, New Matter and Counterclaim to the Association's Amended Complaint, he admitted that the Property is "known as Parcel 'C' in [the Plan]." Trusello's Answer at ¶2. However, Trusello countered that he was not liable to the Association because the Association's bylaws "were not recorded with the Office of the Recorder of Deeds of and for Delaware County, or made a public record until May 8, 2012, some 13½ years after [Trusello] purchased [the Property] and were not signed by [Trusello]." *Id.* at ¶5. Trusello denied that he was unjustly enriched by his failure to pay Association fees and denied that the Association was entitled to attorney's fees. In the New Matter, Trusello alleged, *inter alia*, that the Association's existence was not a matter of public record, and that he had no knowledge that it existed, he never agreed to be a member, and that at the time he purchased the Property, he was not made aware that the Property was part of a civic association and he received no benefit from it. In the Counterclaim, Trusello sought a declaratory judgment that the Property is not included in or subject to the Association's authority.

The Declaration, recorded in the Delaware County Recorder of Deeds Office, does not establish a homeowners' association. However, the Plan depicts the 11.828 acre Open Area and contains a notation that the "OPEN AREA [IS] TO BE DEDICATED TO DEEP MEADOWS CIVIC ASSOCIATION." O.R., Plaintiff's Trial Ex. P1. The Plan does not include any additional information concerning the Association's existence, its purpose, the content or location of its bylaws, or information regarding its membership requirements.

On November 18, 2014, the trial court held a non-jury trial. On November 26, 2014, the trial court entered judgment in favor of Trusello and against the Association on all of the Amended Complaint's counts, but against Trusello on his Counterclaim. The November 26, 2014 order was not docketed until December 1, 2014, and was not sent to counsel until December 3, 2014. Both parties requested reconsideration. By January 2, 2015 order, the trial court timely vacated its order, held argument on February 20, 2015, and, by March 27, 2015 order, reinstated its November 26, 2014 order.

The trial court's opinion relied upon the lack of reference in Trusello's Deed, or the prior owners' deed, to the existence of a homeowners' association or any express right to use the Open Area. As to the Deed and the Plan referenced therein, the trial court stated:

> [T]he recorded [D]eed and recorded [P]lan do not contain language permitting the use of dedicated open space by [Trusello] and do not contain language notifying [Trusello] that the formation of a 'civic association' or homeowners' association would subject [Trusello] (or his specific lot) to rights or obligations of such an association. As noted, . . . the [Plan] depicts Lots 13-25 and Parcels A, B, C and D. Parcels A, B, C and D are not within the streets created by the Plan, but rather are outer parcels accessible by already existing roads not within the internal marked subdivision served by Deep Meadows Drive and Wakefield Court and are not served by the entranceway to the subdivision. In fact, of all the parcels not within the internal marked subdivision area, [Trusello's] Parcel C is the only parcel that does not touch or abut the [Open Area]. Even assuming, *arguendo*, that one could discern from the Plan that a homeowners' association was created (which would be entirely speculative), the location of [Trusello's] parcel would not allow a further assumption that [Trusello's] lot (Parcel C) was part of such an association and, certainly, it could not give rise to any assumption about the terms, rights or obligations of a homeowners' association, including any right to access the open space area or any obligation to pay dues for the owner of Parcel C. It is actual or constructive

4

> notice of the **covenants** of a homeowners' association that is required, not the mere existence of an entity that will have open space dedicated to it in the future.

Trial Ct. Op. at 10-11 (citations and footnote omitted). The trial court also considered that the Association had failed to file its bylaws with the Delaware County Recorder of Deeds until May 8, 2012, more than 13 years after Trusello purchased the Property, and more than 28 years after the bylaws were originally executed. In addition, the trial court weighed Trusello's testimony, finding:

> [Trusello] testified credibly that he did not have actual or constructive notice of the existence of the Association or the covenants of the Association at the time of purchase. Specifically, [Trusello] stated that he was not told his parcel was included in a homeowners' association and there was nothing in his title report or any indication in his chain of title that the parcel that he purchased was part of a homeowners' association. He never signed or received a resale certificate when he purchased the property and the [Association] was unable to produce such a resale certificate. [Trusello] was never given a copy of any homeowners' association bylaws.
>
> After [Trusello] moved into [the P]roperty[,] he received a notice to attend a block party from what he believed to be the neighboring development's homeowners' association and, thereafter, received a separate request for payment of $50.00, from the same homeowners' association, that [Trusello] thought was a contribution request for the cost of the party. He did not receive notice of any Association meetings until 2011 or 2012. [Trusello] never paid any Association dues and did not believe he was part of a homeowners' association. While [Trusello] admits that he recalls receiving yearly bills, for approximately $50.00, he ignored and disregarded them believing them to be either a request for voluntary contribution or a request to contribute to the costs of a yearly block party that he never attended. At no time, prior to 2011 (13 years after [Trusello] moved into the subject property) did the Association inquire as to why [Trusello] was not paying his dues or proceed to collect past due amounts.

5

[Trusello] further credibly testified [that] he did not receive any benefit from the homeowners' association. He testified that [the O]pen [Area] area is not adjacent to and does not abut [the P]roperty. [Trusello]'s testimony also supported the documentary evidence that indicated that he would have to trespass across a neighbor's property (through a thick forest area that he described as impassable) or travel out onto Route 352, a busy highway, and enter the development at its marked entrance to access the [O]pen [Area]. [Trusello] has never used the [O]pen [Area] and was unaware even after entering the marked development area how he would access the unmarked [O]pen [Area].

The only benefit that the [Association]'s witness (George Slick) articulated that [Trusello] received from the [O]pen [Area] was that it was 'quiet'. This Court found that claim to lack believability. The neighborhood in question is residential. [Trusello] lives on a 4-acre residential lot abutting a 5.70–acre residential lot and 2.77-acre residential lot. Even if the [O]pen [Area] did not generate <u>any</u> noise, the configuration and location of the [O]pen [Area] (the sizeable portion of the open space stretches away from [Trusello]'s property) and the size of [Trusello]'s lot and surrounding lots make that claim that there is any measurable benefit of quietness from the [O]pen [Area] unpersuasive and without merit.

Trial Ct. Op. at 11-13 (citations omitted). Thus, the trial court concluded that Trusello had neither actual nor constructive notice that his Property was subject to a homeowners' association and, thus, was not liable for the payment of the Association's dues. The Association appealed to the Pennsylvania Superior Court, which transferred the matter to this Court.[4]

The Association argues that the trial court erred by concluding that Trusello was not obligated to pay the Association's fees. We disagree. Pennsylvania Courts have addressed the ability of homeowners' associations to impose fees in the

---

[4] "Our standard of review of a non-jury trial is to determine whether the findings of the trial court are supported by competent evidence, and whether an error of law was committed." *Swift v. Dep't of Transp.*, 937 A.2d 1162, 1167 n.5 (Pa. Cmwlth. 2007).

absence of express authority to do so. In *Meadow Run and Mountain Lake Park Ass'n v. Berkel*, 598 A.2d 1024 (Pa. Super. 1991), property owners sought review of a trial court decision holding that a homeowners' association had authority to impose fees for the maintenance of roads, dams and other common facilities. On appeal, the Superior Court affirmed, stating:

> Residential communities such as Meadow Run and Mountain Lake Park, are 'analogous to mini-governments' and as such are dependent on the collection of assessments to maintain and provide essential and recreational facilities. *Holiday Pocono Civic Ass['n], Inc. v. Benick*, 7 D. & C.3d 378 (1978). When ownership of property within a residential community allows the owners to utilize roads and other common areas of the development, there is an implied agreement to accept the proportionate costs for maintaining and repairing these facilities.

*Meadow Run*, 598 A.2d at 1026. In response to the property owners' contention that the association did not have authority to impose fees because their deeds did not expressly authorize them, the *Meadow Run* Court explained:

> While it is true that in the instant case the deed does not explicitly spell out the exact obligation of the lot owners with regard to payment of dues for maintenance and repairs, the deed is not wholly silent as to the matter either. This is not a case where the property owners had no notice that an association of owners would be formed or that the association might formulate rules applicable to the owners. The following deed covenant is applicable to all property owners and reads as follows:
>
>> In the event of the formation or incorporation of an association of the lot owners on [the] above mentioned plot of Mountain and Meadow Run Lakes, the occupants of the above[-]described premises shall be bound by such rules and regulations concerning the use of Mountain and Meadow Run Lakes as to boating, bathing, ice skating and fishing, as

7

> may be duly formulated and adopted by such association or incorporation.
>
> This deed, while making no mention of an assessment, does put Appellants on notice that should an association of lot owners be formed in the future, they would be bound by any rules the association adopted concerning usage of development facilities. Implied in the existence of rules and regulations concerning usage of the facilities is the necessity for rules and regulations concerning maintenance of these facilities. . . . Here, each property owner's deed notified them that not only did they have the right to use the facilities, but that they would be bound by any rules regarding this right. . . .
>
> . . . .
>
> [A]bsent an express agreement prohibiting assessments, when an association of property owners in a private development is referred to in the chain of title and has the authority to regulate each property owner's use of common facilities, inherent in that authority is the ability to impose reasonable assessments on the property owners to fund the maintenance of those facilities.

*Id*. at 1026-27.

In *Fogarty v. Hemlock Farms Community Ass'n, Inc.*, 685 A.2d 241 (Pa. Cmwlth. 1996), property owner members of a community association brought an action alleging that the community association's special assessments for the construction of three capital improvements were unauthorized by deed covenants or the community association's bylaws. The property owners' deed covenant required them to be members of the community association and "to pay annual dues and fees, as well as assessments for control, maintenance and repair of streets, roads and recreational facilities." *Id*. at 242. The trial court granted summary judgment in the community association's favor. On appeal, the *Fogarty* Court relied on *Meadow Run* and held that:

> In the present case, all members of [the community association] will benefit from the new mail office,

administration building and clubhouse. Although the [homeowners'] deed does not mention an assessment for these improvements, it does not impose restrictions on the authority granted to [the community association] under its [b]ylaws to construct such facilities. Therefore, absent language in the deed covenant prohibiting [the community association] from levying special assessments for capital improvements, the [property owners] may be assessed their proportionate costs to construct the new improvements.

*Fogarty*, 685 A.2d at 244.

In *Spinnler Point Colony Ass'n, Inc. v. Nash*, 689 A.2d 1026 (Pa. Cmwlth. 1997), this Court addressed property owners' appeal from a trial court's order in favor of the association's dues assessment. There, the property owners' deed afforded them lake rights and the right to travel over the association road. The property owners argued that they had no duty to join a homeowners' association or pay dues or fees for the maintenance of the amenities and roads where the chain of title does not reference a community association, or the obligation to pay to use them. Relying on *Meadow Run*, this Court held that "a property owner who purchases property in a private residential development who has the right to travel the development roads and to access the waters of a lake is obligated to pay a proportionate share for repair, upkeep and maintenance of the development's roads, facilities and amenities." *Spinnler Point*, 689 A.2d at 1029.

In *Hess v. Barton Glen Club, Inc.*, 718 A.2d 908 (Pa. Cmwlth. 1998), several property owners challenged a homeowners' associations' assessments. The homeowners' association owned and maintained a park, lake and beach, swimming pool and clubhouse, and road as well as the entranceway to the development. Each of the homeowners' deeds (with the exception of one, Lee Crowell (Crowell)) contained covenants providing for access to the lake and park and mandated payment of a $30.00 annual fee for such privileges and referenced the homeowners' association. The homeowners challenged the imposition of a $230.00 annual fee as exceeding the

9

permissible $30.00 fee contained in the deed covenants. The homeowners' association asserted that $30.00 of the $230.00 was for lake and park privileges, and the remaining $200.00 was for the maintenance of the common areas and administrative costs. On appeal, this Court explained that:

> All the [o]wners, except Crowell, have language in their chains of title referring to the existence of the [a]ssociation. The only covenants concerning the [a]ssociation's power to assess for common areas in the [o]wners' deeds, again excepting Crowell's, concerns each owners' obligation to pay an annual $30 park and lake fee. However, under *Meadow Run, Fogarty,* and *Spinnler Point,* the [a]ssociation may nonetheless assess the [o]wners a proportionate share of the costs of maintaining all the common areas of [the development]. Furthermore, Crowell is liable for his pro rata share of the cost of maintaining the commons as well, regardless of the fact that the [a]ssociation is not mentioned in his chain of title.[fn]5 *Spinnler Point.* Therefore, we hold that all of the [o]wners are responsible for a proportionate share of the costs of maintaining all of [the development's] common facilities.
>
> . . . .
>
> In the present case . . . the [o]wners' deeds set a fixed limit on the charge for lake and park *privileges* only. There is no ceiling on general assessments in the deeds that would restrict the [a]ssociation's ability to charge property owners a fee for the pro rata share of the costs of maintaining [the development's] common areas. . . .
>
>> [fn]5 We believe that Crowell is obliged to pay his proportionate share of the cost of maintaining the lake and the park, despite the absence of the covenant from his chain of title requiring him to pay the $30.00 lake and park fee. In our view, the $30.00 fee in the other [o]wners' titles is only a limitation on what the [a]ssociation may charge them for use of the lake and park, and that the lake and park are not for the exclusive use of those property owners whose titles include the covenant. The fact that the limitation is not in Crowell's chain

> of title means only that the [a]ssociation is not bound to charge a fixed assessment for Crowell's use of the lake and park.

*Hess*, 718 A.2d at 912-13. In response to the homeowners' argument that because membership in the association was not mandatory, there was no absolute right to use and corresponding duty to pay for the maintenance of the common areas, the Court concluded:

> [A]ny ambiguity in the deed over the question of whether a property owner has a right to use the [a]ssociation's common areas was resolved in March of 1982, when the [a]ssociation entered into a settlement with the lot owners in each section of [the development]. The settlement, which was recorded in the Monroe County Recorder of Deeds Office, granted an easement to [the development's] property owners, specifically, 'the use, liberty and privilege of, and passage in and to the roads, amenities and common facilities' which were conveyed . . . to the [a]ssociation. Although the Common Pleas Court found that the settlement was not in the [o]wners' chain of title, we believe that any owner may nevertheless demand access to all the common areas on the ground that each owner has an easement for use of the commons as evidenced in the settlement agreement.

*Id.* at 914.

In *Huddleson v. Lake Watawga Property Owners Ass'n*, 76 A.3d 68 (Pa. Cmwlth. 2013), a homeowner sought to invalidate the Lake Watawga Association's constitution and bylaws. In finding that they did not apply to the homeowner, this Court explained:

> [T]he only issue is whether [the homeowner] has an interest that obligated her to pay dues or assessments to the [Lake Watawga] Association. In [*Spinnler Point*], 689 A.2d [at 1029], we held that 'a property owner who purchases property in a private residential development who has the right to travel the development roads and to access the waters of a lake is obligated to pay a proportionate share for repair, upkeep and maintenance of the development's roads,

11

facilities and amenities.' Further, we have held that '[e]ven if an owner's chain of title makes no reference to a homeowners' association, we have held that the owner is nonetheless obligated to pay a share of the costs of maintaining common areas managed by a homeowners' association. . . .' [*Hess*], 718 A.2d [at 912].

Unlike in *Spinnler* [*Point*] and *Hess,* [the homeowner] has no interest in the development roads requiring her to pay for common improvements. There is nothing in her deed that imposes any obligation upon her to maintain any property that the [Lake Watawga] Association maintains. She is not obligated to maintain the private road because she does not abut it and has no legal right to use it, her access being from a public road. While she does have [l]ake access, the [neighboring community's homeowners' association] is the owner of the [l]ake, not the [Lake Watawga] Association, and any contributions by the [Lake Watawga] Association to the [neighboring community's homeowners' association] are voluntary. Moreover, there is nothing in the Nonprofit Corporation Law that gives it the right to bind non-members or make membership mandatory absent a shared obligation.

*Huddleson,* 76 A.3d at 73 (footnote omitted).

In the instant matter, the Association contends that *Meadow Run*, *Fogarty*, *Spinnler Point* and *Hess* support its position that Trusello is obligated to pay Association fees even though the Deed does not expressly reference a homeowners' association or confer the right to access the Open Area. However, the trial court correctly found the Association's legal authority unconvincing.

Unlike the homeowners in *Meadow Run* and *Fogarty*, Trusello clearly had no notice at the time he purchased the Property that it was or might in the future be subject to a homeowners' association and, thus, the trial court properly distinguished those cases. The trial court also appropriately found *Spinnler Point* to be inapposite because, unlike the deeds in *Spinnler Point*, Trusello's Deed afforded him no right to use any common property. Further, the trial court correctly

12

distinguished *Hess* based on the existence of the settlement agreement in that matter which expressly conveyed the property owners' rights to use the common areas.

Here, as in *Huddleson,* "there is nothing in [the D]eed that imposes any obligation upon [Trusello] to maintain any property that the Association maintains[,]" and there is nothing in the Deed conveying to Trusello the right to use the common areas. *Id.* at 73. Nor is there any indication in the Deed that the Property would be subject to a homeowners' association. In fact, the only reference to "Deep Meadows" in the Deed is a reference to the subject lot on the Plan.[5] Although the Plan identifies the Open Area as "Open Area to be Dedicated to Deep Meadows Civic Association," it does not provide any indication of the proposed use for the Open Area, or provide any information regarding the purpose or function of the Association. O.R., Plaintiff's Trial Ex. P1. Further, information about the Association was not publicly-accessible since it did not register its bylaws until more than 13 years after Trusello purchased the Property. Given these considerations, along with the Property's location on the outer edge of the Development, accessible from public roads and inaccessible from the Development's roads, the trial court properly found that Trusello had neither actual nor constructive notice that the Property was subject to a homeowner's association.[6] *See Rybarchyk v. Pocono Summit Lake Prop. Owners Ass'n, Inc.*, 49 A.3d 31 (Pa. Cmwlth. 2012).

Finally, the Association contends that Trusello benefits from the Open Area even though it is not directly adjacent to his Property since he can drive into the

[5] Interestingly, although the Plan shows Trusello's Property as Parcel C, the "Location Map" in the Plan's upper left corner depicting the Development area is drawn to **exclude Trusello's Property** from the designated Development area. *See* O.R., Plaintiff's Trial Ex. P1. This contradiction in the Plan was not addressed by the parties or the trial court, but further confirms that Trusello did not have notice that the Property was subject to a homeowners' association.

[6] Trusello testified that the Development's entrance is marked with a "Deep Meadows" sign, and is adorned with lights and flowers. There are no such markings along Sycamore Mills Road leading to his home, nor is there Association landscaping at his Property. *See* Reproduced Record at 73a-74a.

13

Development and access the Open Area from there and, thus, he should be required to pay his share for that benefit. Citing to *Hess*, the Association argues that "[e]ach record owner's ability to choose to enjoy the common areas is the benefit that is conferred." Association Br. at 17. However, Trusello testified that even from within the Development, there was no marked path to the Open Area, and no clear way to access the Open Area without walking between homes, and potentially trespassing on another homeowner's property. Thus, there is no evidence that the Open Area is accessible to Trusello. Given the trial court's explicit rejection of the Association's contention that Trusello benefitted from the quiet of the Open Area, there is no record evidence that Trusello receives any benefit from the Open Area.

For all of the above reasons, the trial court's order is affirmed.[7]

_____
ANNE E. COVEY, Judge

---

[7] Given our disposition of this appeal, we need not address the Association's request for attorney's fees.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deep Meadows Civic Association,     :
                        Appellant     :
                                 :
             v.                 :
                                 :    No. 1258 C.D. 2015
Edward Trusello                    :

## O R D E R

AND NOW, this 3rd day of June, 2016, the Delaware County Common Pleas Court's March 27, 2015 order is affirmed.

_____
ANNE E. COVEY, Judge